# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUNIUS BURNO,

*Petitioner*,

v.

JOHN E. WETZEL, et al.,

*Respondents*.

CIVIL ACTION
NO. 15-06307

**PAPPERT, J.**                                    **August 2, 2021**

## MEMORANDUM

In March of 2007, Junius Burno was convicted of two counts of first-degree murder and sentenced to death. The Supreme Court of Pennsylvania affirmed Burno's conviction and sentence on February 22, 2017. *Commonwealth v. Burno*, 154 A.3d 764 (Pa. 2017). He timely filed a *pro se* Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2254 and later moved to supplement, or in the alternative, amend the Petition. For the reasons set forth below, the Court denies both the Motion to Supplement and the Petition.[1]

---

[1]    The Court originally filed a Memorandum and Order on November 22, 2019 denying Burno's *habeas* Petition. (ECF 92, 93.) Burno noticed an appeal and the Third Circuit Court of Appeals received a copy of the state court record. The Third Circuit recognized that certain Commonwealth Exhibits were missing from the record and ordered that this Court request the full record from the Court of Common Pleas, Lehigh County for Burno's direct and post-conviction proceedings. Specifically, it ordered the Court to request Commonwealth Exhibits 72, 74A, 74B, 76, 78, 119–132 and 135.

The Third Circuit received the supplemental state court record on July 13, 2020. Three days later, this Court sent a letter to the Clerk of the Third Circuit explaining that the listed supplemental exhibits were not included in the original state court record the Court reviewed when deciding Burno's *habeas* Petition in November of 2019. Those exhibits appeared relevant to Claims V, VI and VII of the Petition.

I

A

The Supreme Court of Pennsylvania explained in detail the case's factual and procedural history. *See Burno*, 154 A.3d 764. On April 13, 2003, two men entered an apartment in Allentown, Pennsylvania, where they shot and killed Carlos Juarbe and Oscar Rosado. *Id.* at 771. When police officers arrived at the scene, a witness told them that she saw two men flee the area in a "red or maroon compact car." *Id.* at 775. The investigation that followed led to the arrest of co-defendant Terrence Bethea, who implicated Burno in the shootings. *Id.* at 771. The police then learned that Burno owned a car matching the one described by the witness. *Id.* at 775. Burno was arrested on September 12, 2003. *Id.* at 771.

Burno retained Glennis Clark as his counsel, and on September 24, 2003, Clark arranged for a meeting with Lehigh County Assistant District Attorney Maria Dantos and Allentown Police Department Detectives Wayne Simock and John Miller at the District Attorney's Office. *Id.* At that meeting, ADA Dantos and Detective Simock explained to Burno the rules applicable to his anticipated cooperation: in exchange for Burno telling the truth and agreeing to testify against co-defendant Bethea, ADA Dantos would not seek the death penalty against Burno. *Id.* If the negotiations fell through, however, statements made by Burno would be used against him at trial. *Id.*

---

On March 29, 2021, the Third Circuit vacated this Court's November 22, 2019 Order denying Burno's *habeas* Petition and remanded the matter so this Court could adjudicate the Petition with a complete record. The Court has reviewed the supplemental state court record—including Commonwealth Exhibits 72, 74A, 74B, 76, 78, 119–132 and 135—which supports the Court's denial of Burno's Petition.

The parties agreed to these terms, and Burno then spoke about the murders for two hours during an unrecorded conversation.  *Id.*

After the meeting, Detectives Simock and Miller took Burno to the police station to record his statement.  *Id.* at 772.  Once there, Detective Simock read Burno his *Miranda* warnings, after which Burno repeated the statements he had made earlier in the day—this time tape recorded by the police.  *Id.*  Burno claimed that he drove Bethea to Juarbe's apartment to trade guns for drugs, but Burno maintained that Bethea was the only person to ever enter the apartment where Juarbe and Rosado were killed.  *Id.*

The detectives and prosecutor did not believe Burno's statement, so ADA Dantos and Clark agreed to administer a polygraph examination to Burno.  *Id.*  On September 26, 2003, Officer Keith Morris met with Burno, read him his *Miranda* rights and administered the polygraph.  *Id.*  Clark was not present for the test.  *Id.*  Immediately after the exam, Officer Morris told Burno that he had failed the polygraph, and Burno reacted by stating that no one could save him now.  *Id.*  In response, Officer Morris told Burno that telling the truth is how a person in Burno's position could help himself.  *Id.*

Burno then asked to speak with his attorney, but Clark was unavailable.  *Id.* ADA Dantos went to the interview room—where Burno was upset and crying—to tell him that authorities were trying to contact Clark.  *Id.*  Burno apologized to ADA Dantos for lying, and in response, she told Burno that because he was not truthful, the parties no longer had a deal to forego the death penalty; however, if Burno remained truthful from that point on, ADA Dantos said she would reconsider plea discussions.  *Id.*

After this conversation, ADA Dantos reached Clark on the phone and he agreed to come to the police station.  *Id.*  In the meantime, Clark authorized the detectives to

3

question Burno outside of his presence, reasoning that Burno could not, given his lies to that point, damage himself any further. *Id.* Burno then met with Detectives Simock and Joseph Effting, who read him his *Miranda* warnings. *Id.* Burno subsequently admitted that he was inside the apartment at the time of the murders, got into a struggle with Rosado and shot Rosado with a 9 mm handgun. *Id.*

Clark arrived at the police station after Burno's confession and knocked on the interview room door. *Id.* at 772–73. He sat down, spoke with Burno and the interview continued. *Id.* at 773. The second half of the interview consisted of the detectives reviewing much of what Burno had already stated, and he again admitted to participating in the murders. *Id.* At the end of the interview, Detective Simock reminded Burno that in order for the prosecution to consider dropping the death penalty, Burno's statements must be truthful and he was still required to testify against Bethea at a preliminary hearing. *Id.* On the day before Bethea's hearing, however, Burno refused to testify against Bethea. *Id.* As a result, ADA Dantos informed Burno she would seek the death penalty. *Id.*

Prior to trial, Burno filed several motions to suppress statements made to the police. *Id.* Burno claimed, among other things, that (1) his arrest warrant lacked probable cause and any subsequent statements were fruit of the poisonous tree; (2) his statements during the polygraph test were coerced by Officer Morris; (3) his statements were inadmissible because they took place during plea negotiations; and (4) his September 26, 2003 statements were involuntary because Clark was not present for the first part of the interview and the second part remained tainted by his attorney's initial absence. *Id.* After holding an evidentiary hearing, the trial court denied all but one of

4

Burno's motions to suppress, excluding only the first part of the September 26 confession that took place outside the presence of counsel.  *Id.*

Burno then filed a motion seeking assignment of a different prosecutor based on his plan to call ADA Dantos as a material witness regarding the voluntariness of his confessions.  *Id.*  The trial court granted the motion in part by relegating ADA Dantos to second chair.  *Id.*  The Commonwealth moved for reconsideration, which the trial court denied.  *Id.*  The Commonwealth then successfully appealed the issue to the Superior Court, and ADA Dantos was reinstated as lead prosecutor.  *Id.* at 774.

The pendency of the appeal delayed the trial for approximately one year.  *Id.* Because of the delay, Burno sought the dismissal of all charges on the ground that he was denied the right to a speedy trial pursuant to Pennsylvania Rule of Criminal Procedure 600, which generally requires a trial to commence within 365 days from the filing of a criminal complaint.  *Id.*  The trial court denied the motion after holding an evidentiary hearing, and Burno's jury trial took place.  *Id.*

At trial, the jury heard evidence relating to Burno's guilt from multiple independent sources.  In addition to the inculpatory statements that Burno gave to the police on September 24 and 26, 2003, the jury heard testimony from David Rawlins, a jailhouse informant who testified pursuant to a plea deal.  *Id.* at 776.  According to Rawlins, Burno told him that he entered the apartment after Rosado shot Bethea, and that upon entering, Burno shot Rosado, who was on his knees pleading for his life.  *Id.* The jury also heard recordings of Burno's phone calls from the Lehigh County Jail, in which he admitted to his ex-wife Kimberly and acquaintance James Alford that he was involved in the shootings.  *Id.*  During the phone calls, Burno said that he shot one of

the victims multiple times, had a 9 mm handgun, and "deaded some people." *Id*. at 787.

He also placed himself at the murder scene and talked about the guns he disposed of

after the shootings. *Id*. at 788. Moreover, Burno attempted to get Kimberly to contact

Bethea so that the two men could get their stories straight. *Id*.

The jury also heard testimony from forensic pathologists, a ballistics expert, and

Burno himself. *Id*. at 776. The forensic pathologist testified that Rosado died of a

gunshot wound to the head, and based on the bullet trajectory, opined that the gunman

was above Rosado at the time of the shooting. *Id*. After hearing all the evidence, the

jury convicted Burno of two counts of first-degree murder and recommended a death

sentence, *id*. at 777, which the trial court imposed. *Id*. at 788.

After the conviction and sentence, Burno's trial and penalty phase attorneys

moved to withdraw as counsel. The court granted the motion and appointed a new

attorney to represent Burno on appeal. *Id*. at 777–78. His new counsel filed post-trial

motions raising, among other things, trial counsel's ineffectiveness. *Id*. at 778. Even

though Pennsylvania law typically requires ineffectiveness claims to be raised on

collateral review, the trial court nevertheless considered Burno's argument, found that

trial counsel was ineffective, and granted him a new trial. *Id*. The Commonwealth

appealed the decision directly to the Supreme Court of Pennsylvania and Burno filed a

protective cross-appeal in response. *Id*.

The Supreme Court, after finding the trial evidence sufficient to sustain the

verdict, considered the ineffective assistance of counsel claims. *Id*. The court noted

that at the time the trial court considered the IAC claims, it did not have the benefit of

*Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013). *Burno*, 154 A.3d at 778. In *Holmes,*

the Supreme Court of Pennsylvania held that trial courts "should entertain claims of ineffective assistance of counsel on direct review only if there is good cause shown, and 'the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence.'" *Burno*, 154 A.3d at 778–79 (quoting *Holmes*, 79 A.3d at 564).  Consistent with *Holmes*, the Supreme Court dismissed Burno's ineffective assistance of counsel claims without prejudice and remanded his remaining claims to the trial court.  *Id.* at 779.  On remand, the trial court denied all of Burno's motions.  *Id.*  Burno then filed his second direct appeal to the Supreme Court of Pennsylvania.  *Id.*

B

While Burno's second direct appeal was pending, he filed his Petition for Writ of *Habeas Corpus*.  (ECF No. 1.)  The Court ordered the Petition stayed and held in abeyance pending the resolution of Burno's appeal.  (Order Staying Pet., ECF No. 18.)  On February 22, 2017, the Supreme Court of Pennsylvania affirmed Burno's conviction and death sentence, s*ee Burno*, 154 A.3d 764, and the conviction became final on May 23, 2017, when the time to file a petition for a writ of *certiorari* to the United States Supreme Court expired.  *See* U.S. Sup. Ct. R. 13(1).  Burno did not file a petition for post-conviction relief under Pennsylvania's Post Conviction Relief Act (PCRA).

The Court appointed the Federal Community Defender Office as counsel for Burno pursuant to 18 U.S.C. § 3599(a)(2), which provides that in a post-conviction proceeding under 28 U.S.C. § 2254, a petitioner seeking to vacate or set aside a death

sentence shall be entitled to the appointment of an attorney.[2]  (Order, ECF No. 30.)

Burno responded by filing a Motion to Remove Counsel and Proceed *Pro Se*, (ECF No.

32), and the Defender Office also moved to withdraw as counsel.  (ECF No. 34.)  The

Court held a hearing to resolve the motions.  (ECF No. 38.)

At the hearing, Burno was adamant that he did not want counsel of any kind

because he had seen situations where the attorney "acted as if he was counsel in chief

and filed things and did things without his client's permission."  (Sept. 27, 2017 Hr'g Tr.

9:9–10, ECF No. 45.)  Burno also stated that he would refuse to cooperate with

whomever the Court appointed as counsel.  (Sealed Sept. 27, 2017 Hr'g Tr. 7:20–22,

ECF No. 46.)  The Court warned Burno that it would be a "monumental mistake" to

proceed *pro se*, but Burno remained steadfast in his position.  (*Id.* 12:15–21.)  After a

lengthy discussion with Burno, the Court ultimately granted his Motion to Proceed *Pro

Se*.  (Order, ECF No. 41.)

At this same hearing, Burno also said he would not pursue collateral post-

conviction relief under the PCRA.  *See* (Sept. 27, 2017 Hr'g Tr. 17:10–22).  Both the

Commonwealth's attorney and the Court encouraged Burno to pursue the PCRA

process, with the Commonwealth's attorney stating that Burno's ineffective assistance

of counsel claims "seem very important to him," and that he should "understand[] that

they will be waived if they're not . . . exhausted in State Court."  (*Id.* at 12:12–15.)  The

Court also cautioned Burno by asking him, "[D]o you understand that if you do not

pursue the PCRA process, you're going to lose" the ineffective assistance of counsel

---

[2]     The Court's Order appointing counsel also cited *In re Commonwealth's Mot. to Appoint Counsel*, which states that the "District Court *must* appoint counsel to any indigent inmate, federal or state, pursuing a federal habeas corpus challenge to a death sentence."  790 F.3d 457, 462 (3d Cir. 2015).

claims?  (*Id.* at 12:22–23.)  The Court reiterated to Burno that "everyone here is trying to tell you [that] if you do not pursue that [IAC] claim consistent with the statutory requirements, you may very well lose it."  (*Id.* at 14:6–8.)  Nonetheless, in response to the Court's understanding that Burno refused to go through PCRA process, Burno stated, "You got that right."  (*Id.* at 17:15.)

After the hearing, the Court lifted the stay-and-abey posture of the case and directed Burno to file a memorandum in support of his Petition.  (Order, ECF No. 43.)  Burno subsequently filed his Memorandum of Law in Support of his Petition for *Habeas Corpus*, asserting seven grounds for relief.  (ECF No. 60.)  The Commonwealth filed a Response (ECF No. 74), and Burno filed a Reply (ECF No. 87).  Burno then moved "to supplement, or in the alternative, amend" his Petition.  (ECF No. 88.)  The Court will first consider Burno's Motion to "supplement, or in the alternative, to amend" the Petition, and will then turn to the seven grounds for relief in the Petition itself.

II

The Antiterrorism and Effective Death Penalty Act provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  Because Burno filed his federal *habeas* Petition before the resolution of his direct appeal to the Supreme Court of Pennsylvania, it was timely filed.  *See* (Pet., ECF No. 1).  He then moved to "supplement, or in the alternative, amend" the Petition with two new claims on June 16, 2019.  *See* (Mot. Leave to Suppl. ("Mot."), ECF No. 88).  He believes the new claims are not time-barred because they relate back to claims asserted in his Petition.

9

The Federal Rules of Civil Procedure permit Burno to amend his Petition with additional claims that would otherwise be time-barred if the new claims "relate back" to the date of the Petition. *Mayle v. Felix*, 545 U.S. 644, 655 (2005); *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 236 (3d Cir. 2017), *cert. denied sub nom. Wilkerson v. Lane*, 138 S. Ct. 1170 (2018). The United States Supreme Court has held that "relation back" in the *habeas* context "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle*, 545 U.S. at 659 (citing *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc*., 690 F.2d 1240, 1259 n.29 (9th Cir. 1982) and 6A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1497 (2d ed. 1990)). An untimely claim "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the [petition] set forth." *Id.* at 650.

## A

Burno's Motion first presents a claim that his trial counsel and post-sentence motion/direct appeal counsel were ineffective for failing to argue that the Commonwealth seized and suppressed exculpatory evidence before his trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Proposed Suppl. Pt. 1, ECF No. 88.) Burno believes the Commonwealth "[u]s[ed] Lehigh County Prison staff to seize" two documents from him: "a hand written note from [ADA Dantos] outlining specifically what she would want and need from [Burno] in order to make a plea deal" and "a handwritten note from Co-defendant Bethea admitting sole responsibility" for the two murders. (*Id.* at 2.) Burno contends that this claim relates back to Claim II of the

Petition, in which he argues his speedy trial rights were violated.  (Mot. 1–2; Br. Supp. Pet. 28–50, ECF No. 60.)

Burno's proposed IAC claim is not time-barred because it relates back to his speedy trial claim.  In Claim II of the Petition, Burno argued that he was prejudiced by the violation of his right to a speedy trial, in part because the Commonwealth stole the above-mentioned documents while he awaited trial for an unnecessarily long time.  (Br. Supp. Pet. 43–44.)  He also argued that his counsel "failed to appreciate the significance of the seized documents and refused to pursue their return."  (*Id.* at 44.)  Burno's proposed IAC claim thus shares a "common core of operative facts" with the speedy trial claim, and Respondents had fair notice of Burno's belief that his counsel was ineffective for failing to address the alleged *Brady* violation.  *See United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019) ("[T]he touchstone for relation back is fair notice . . . .  Thus, only where the opposing party is given fair notice of the general fact situation and the legal theory upon which the amending party proceeds will relation back be allowed." (quoting *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012) (internal quotation marks omitted))).

B

Burno's Motion next presents a claim that (1) trial counsel was ineffective for not advising him to plead guilty in exchange for the Commonwealth's agreement to not seek the death penalty and (2) his post-sentence motion/direct appeal counsel was ineffective for failing to raise this IAC claim.  (Proposed Suppl. Pt. 12–15.)  Burno contends these claims relate back to Claim VI of his Petition, in which he argued (1) the trial court improperly allowed a statement made during plea discussions into evidence,

11

(2) trial counsel was "ineffective for failing to raise this issue" and (3) the Supreme Court of Pennsylvania "denied due process when it denied review of the merits when [this claim] was fairly presented on direct appeal." (Mot. 12; Br. Supp. Pet. 91–108.)

This proposed claim relates back to Claim VI of the Petition and is not time-barred by AEDPA's statute of limitations. In the Petition, Burno described in detail the circumstances surrounding his plea discussions and his counsel's role in them. (Br. Supp. Pet. 91–108.) Burno's proposed IAC claim thus shares a "common core of operative facts" with Claim VI.

C

Respondents contend that even if the proposed claims relate back to the Petition, the Court should deny Burno's Motion because the proposed amendments would be futile. A *habeas* petition "may be amended . . . as provided in the rules of procedure applicable to civil actions." *Mayle*, 545 U.S. at 649 (quoting 28 U.S.C. § 2242) (alteration in original). "Prejudice to the non-moving party is the touchstone for the denial of an amendment," *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017) (quoting *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)), but denial of leave to amend may also be based on futility, repeated failure to cure deficiencies by amendments previously allowed, and undue delay, bad faith or dilatory motive on the part of the movant. *Id.* at 149 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) and *United States ex rel. Schumann v. AstraZeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014)). Amendment is futile if the proposed pleading could not withstand a motion to dismiss. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir.

2018) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)).

The amendments would be futile; they are both IAC claims, which are procedurally defaulted because Burno did not file a petition for post-conviction relief under the PCRA.[3]  *See Wallace v. Wydner*, 2010 WL 173598, at *4 (E.D. Pa. Jan. 15, 2010) (citing *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002)); *see also Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 760 (3d Cir. 2018).  Moreover, Burno has not given any reason for the Court to excuse the procedural default.  "In all cases in which a state prisoner has defaulted his federal claims in state court . . . federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

---

[3]      Burno raised ineffective assistance of counsel claims on his first direct appeal to the Supreme Court of Pennsylvania.  The court dismissed the claims without prejudice, "effectively deferring them until collateral [PCRA] review."  *Burno*, 154 A.3d 764, 779; *see Commonwealth v. Burno*, 94 A.3d 956, 971 (2014).  When Burno filed his federal *habeas* Petition before the resolution of his second direct appeal, this Court agreed to stay the Petition and warned Burno that he "must first raise his ineffective assistance of counsel claim[s] under Pennsylvania's Post Conviction Relief Act ("PCRA")" because "[i]f he fails to do so, [they] will not be considered 'exhausted' for the purposes of 28 U.S.C. § 2254(b)(1)(A) and will therefore be procedurally defaulted."  (Order Staying Petition 1 n.1, ECF No. 18 (citing *Gonzalez v. Superintendent Graterford SCI*, 655 F. App'x 96 (3d Cir. 2016))).  The Court repeated its warning in an Order denying Burno's motion to reconsider the stay-and-abey order. (Order Denying Mot. Recons. 3, ECF No. 21.)

After the Supreme Court of Pennsylvania affirmed Burno's conviction, Burno moved to lift the stay.  (ECF No. 37.)  The Court granted his motion after a hearing on September 27, 2017 at which the Court again told Burno that the Supreme Court of Pennsylvania dismissed his IAC claims without prejudice so that he could pursue them under the PCRA.  (Sept. 27, 2017 Hr'g Tr. 18:11–18:15); *see* (Order Granting Mot. Clarification ¶ 1, ECF No. 54).  Burno nonetheless stated that he would not file a PCRA petition.  (Sept. 27, 2017 Hr'g Tr. 17:7–19:8.)

*Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To show that a fundamental miscarriage of justice would result from the court's failure to consider a claim, the petitioner must present new, reliable evidence that he is innocent and demonstrate that, in light of that new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.  *See Schlup v. Delo*, 513 U.S. 298, 324–27 (1995).

Burno's assertion that "the state . . . actively operated to block [him] from raising" his IAC claims "when and where he should have," (Proposed Suppl. Pet. 11), is insufficient to excuse his procedural default.  Respondents and the Court urged Burno several times to assert his IAC claims in a PCRA petition.  *See supra* note 2.  Burno nonetheless chose not to file a PCRA petition because he "believe[d] that [he] had the right to be before this court."  (Sept. 27, 2017 Hr'g Tr. 17:7–25.)  His argument that the Court's failure to consider his IAC claims will result in a miscarriage of justice likewise fails.  He cannot demonstrate that the exculpatory documents allegedly seized from him in violation of *Brady v. Maryland* are "new" evidence of his innocence—he was aware of the documents and their alleged theft before trial.  *See* (Proposed Suppl. Pet. 2–5). Burno could have alleged in a PCRA petition that his counsel was ineffective for not raising a *Brady* claim.  He chose not to do so.

Finally, Burno's reliance on *Richardson v. Superintendent Coal Township SCI* to excuse his procedural default is unavailing.  *See* (Mot. 3–4).  *Richardson*—which held that a defendant is entitled to effective counsel at the post-sentencing motion stage— does not alter the procedural requirement that the defendant must "bring ineffective-assistance-of-counsel claims on state habeas, not on direct appeal."  905 F.3d at 760 (citing *Grant*, 813 A.2d at 737–38).

14

III

The Court next turns to Burno's Petition itself.  He presents seven grounds for relief, most of which involve multiple sub-arguments:

I      The Supreme Court of Pennsylvania denial [sic] of the Petitioner's interlocutory appeal as of right was an illegal abrogation which denied him review of the merits upon a constitutional claim at a time when he met the requirements and was entitled to pursuit of said appeal, thus, all in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

II      Petitioner's right to a speedy trial was denied by the state's unauthorized appeal that caused an inordinate delay, trial court's denial of relief was improper and prior counsel was ineffective failing to properly raise and litigate this claim, all in violation of the Fifth, Sixth and Fourteenth Amendments of the United State's [sic] Constitution.

III      Mr. Burno was forced into hybrid representation which turned out to be a bait and switch scheme by court appointed counsel and trial court, this caused him loss of an effective, meaningful appellate process, meritorious claims and an inordinate amount of time as well, the Pennsylvania Supreme Court denied him relief from the situation improperly, thus, violating his rights of access to courts, self-representation, due process and equal protection.

IV      Mr. Burno's arrest was unlawful as even the misrepresentations, falsifications and omissions within the sworn affidavit lacked any probable cause and thus, his coerced, false confession should have been suppressed, trial counsel was ineffective for failing to present and preserve this claim, and the Pennsylvania state courts failed to permit full and fair litigation upon this claim, all in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

V      Mr. Burno's September 26, 2003 statement to police must be suppressed in its entirety because the trial prosecutor illegally applied pressure and coercion upon him when she spoke privately with him and unlawfully induced his false confession, outside the presence of counsel.  Trial counsel was ineffective for failing to raise this claim and, the Pennsylvania Supreme Court abrogated his right to review upon the merits of this claim.  All in violation of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

VI      Mr. Burno was prejudiced by the trial court's decision that allowed his statement made only during plea discussions to be used at trial, due to an unreasonable application of federal law (Fed. R. Crim. P. 11 and Fed. R. Evid. 410), based on an unreasonable determination of facts.  Trial counsel was ineffective for failing to raise this issue and the Pennsylvania Supreme Court denied due process when it denied review of the merits when it was fairly presented on direct appeal.

VII      It was improper for the state to not be required to carry its burden of proving a purge of the primary taint from the second half of Mr. Burno's September 26, 2003 statement from the first half which was obtained by exploitation of the initial illegality of violating the "brite-line" [sic] rule in *Minnick v. Mississippi*.  The trial court erred and abused its discretion, and the Pennsylvania Supreme Court denied due process of this claim when on direct appeal it was fairly presented in Mr. Burno's interlocutory

appeal as of right, all in violation of the Fifth, Sixth and Fourteenth Amendments of
the United States Constitution.

(Br. Supp. Pet. ii–iv.)

A

1

AEDPA governs writs of *habeas corpus* for persons in custody "pursuant to the
judgment of a State court only on the ground that he is in custody in violation of the
Constitution or laws" of the United States.  28 U.S.C. § 2254(a).  AEDPA imposes
requirements that prisoners must first satisfy before a federal court may consider the
merits of a *habeas* petition.  One such requirement is that: "An application for a writ of
habeas corpus on behalf of a person in custody pursuant to the judgment of a State
court shall not be granted unless it appears that the applicant has exhausted the
remedies available in the courts of the State."  *Id*. § 2254(b)(1)(A).  To satisfy the
exhaustion requirement, the petitioner must "fairly present" both the facts and federal
legal theories of his federal *habeas* claims in state court.  *O'Sullivan v. Boerckel,* 526
U.S. 838, 848 (1999).

"[T]he critical requirement [for exhaustion] is fair presentation *by the petitioner*."
*Rainey v. Varner*, 603 F.3d 189, 200 (3d Cir. 2010).  Thus, the decision regarding
exhaustion is based on what the petitioner includes in his filings to the state court
rather than the way in which the state court responds to those arguments.  *Id.*  A claim
is considered "fairly presented" when the factual substance and legal theory are
presented to the state court "in a manner that puts [the state court] on notice that a
federal claim is being asserted."  *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.
1999).

In Pennsylvania, a capital *habeas* petitioner has exhausted his claim once he has fairly presented it to the Supreme Court of Pennsylvania. This presentation can occur either on direct appeal from the conviction or sentence or during collateral proceedings under the PCRA. *See* 42 Pa. Cons. Stat. Ann. § 9542 *et seq.* In other words, "[o]nce a claim is presented to the state court in a direct appeal, it need not be repeated in later collateral proceedings." *Bridges v. Beard*, 941 F. Supp. 2d 584, 593 (E.D. Pa. 2013) (citing *Castille v. Peoples*, 489 U.S. 346, 350 (1989), and *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984)). A claim that is not exhausted in state court is considered procedurally defaulted.

"Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal clams has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731–32. Therefore, "[a] federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Walker v. Martin*, 562 U.S. 307, 315 (2011) (alteration in original) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009)). In cases where state appellate courts "have not had a chance to mend their own fences and avoid federal intrusion," the writ "extracts an extra charge by undercutting the State's ability to enforce its procedural rules." *Engle v. Isaac,* 456 U.S. 107, 129 (1982).

When a claim is procedurally defaulted, a federal *habeas* court will not review the claim unless the petitioner can demonstrate one of the following two exceptions: (1) a showing of "cause for the default and actual prejudice as a result of the alleged

17

violation of federal law," or (2) a demonstration that the reviewing court's "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To establish "cause," the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 192–93 (3d Cir. 2000) (quoting *Murray*, 477 U.S. at 488). To show "actual prejudice," the petitioner must prove that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Second, for a fundamental miscarriage of justice to result, the petitioner must demonstrate new and reliable evidence of actual innocence. *Schlup*, 513 U.S. at 324–27.

2

When a petitioner's federal *habeas* claims have been properly exhausted and adjudicated on the merits in state court, AEDPA's deferential standards apply to the federal *habeas* court's review of the claims. The federal court cannot grant relief "unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A state court decision is contrary to clearly established federal law, as determined by Supreme Court precedent, if it "applies a rule that contradicts the governing law set forth," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

18

different result." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). The state court's decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08. And a state court's decision is based on "an unreasonable determination of facts" only if the state court's findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 324 (2003). The factual determinations of the state court are presumed correct absent clear and convincing evidence to the contrary. *Id.* (citing 28 U.SC. § 2254(e)(1)).

B

1

As an initial matter, some of Burno's claims include allegations of ineffective assistance of counsel—specifically Claims II, IV, V and VI. *See* (Br. Supp. Pet. ii–iv). Burno raised IAC claims for the first time with the state trial court, which granted him a new trial as a result of two IAC allegations. (Order, Sept. 30, 2009, No. CP-39-CR-0006337-2003.) The Commonwealth timely filed a notice of appeal to the state supreme court, and Burno filed a protective cross-appeal. (Notice of Appeal, Oct. 9, 2009, No. CP-39-CR-0006337-2003.) The Supreme Court of Pennsylvania heard oral argument and subsequently issued an opinion reversing the trial court's order that granted Burno a new trial. *Burno*, 94 A.3d at 956. Specifically, the court dismissed Burno's claims of ineffective assistance of counsel without prejudice and directed him to pursue those claims on collateral review through the PCRA process. *Id.* at 978.[4] In doing so, the

---

[4]      Even though the Supreme Court of Pennsylvania dismissed the IAC claims without prejudice, the court went on to "address these claims for the sake of clarity." *Burno*, 94 A.3d at 972. The court

19

court relied on *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013), which requires IAC claims to be deferred to collateral review. *Burno*, 94 A.3d at 970. The trial court, however, did not have the benefit of relying on *Holmes* because that case was decided in 2013, four years after the trial court granted Burno a new trial in 2009.[5]

After Burno's IAC claims were dismissed without prejudice, he never pursued the PCRA process, and instead he filed a federal *habeas* Petition in 2015. *See* (ECF No. 1). The Court placed the Petition in a stay-and-abey posture and warned Burno that he "must first raise his ineffective assistance of counsel claim[s] under Pennsylvania's Post Conviction Relief Act ("PCRA")" because "[i]f he fails to do so, [they] will not be considered 'exhausted' for the purposes of 28 U.S.C. § 2254(b)(1)(A) and will therefore be procedurally defaulted." (Order Staying Petition 1 n.1, ECF No. 18 (citing *Gonzalez v. Superintendent Graterford SCI*, 655 F. App'x 96 (3d Cir. 2016))). Burno still refused to pursue his claims through the PCRA.

2

Burno's ineffective assistance of counsel claims were not presented in conformity with Pennsylvania law and are therefore procedurally defaulted. The Petition alleges

---

concluded that Burno's counsel was not ineffective for failing to raise objections during portions of the prosecutor's closing argument where ADA Dantos: (1) referred to Burno's other past crimes to refute that he was "good family man," and (2) indicated that Burno "cowardly shot Juarbe while he was down on the ground." *Id.* at 973–76. Neither of those two IAC claims are contested in Burno's *habeas* Petition. The IAC claims that Burno raises in this present Petition, however, were raised and subsequently dismissed without prejudice in the 2014 *Burno* decision. *See Burno*, 94 A.3d at 967–68 (listing IAC claims Burno raised in his cross-appeal).

[5]      The rule announced in *Holmes* stemmed from two previous Supreme Court of Pennsylvania cases addressing the issue of whether IAC claims should be deferred to the PCRA process. In *Commonwealth v. Grant*, the court established the general rule requiring courts to defer defendants' claims of ineffectiveness to the PCRA process rather than to address them on direct appeal. 813 A.2d 726 (Pa. 2002). A year later in *Commonwealth v. Bomar*, the court created an exception to *Grant*, allowing for IAC claims to be reviewed on direct appeal if they were "raised and fully developed at a hearing in the trial court." 826 A.2d 831, 855 (Pa. 2003). *Holmes* had the effect of severely limiting the *Bomar* exception and reaffirming the general rule prescribed in *Grant*.

IAC with respect to prior counsel's failure to raise: (1) the speedy trial claim; (2) the probable cause claim; and (3) the claims that his September 26, 2003 confession was the product of coercion and admitted in violation of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11. *See* (Br. Supp. Pet. ii–iv).

The Supreme Court of Pennsylvania dismissed Burno's ineffective assistance of counsel claims without prejudice in accordance with *Holmes* and *Grant*, so he still had the opportunity to present his IAC claims through the PCRA process. *See Burno*, 94 A.3d at 978.  Notwithstanding the directions from this Court, the Supreme Court of Pennsylvania and the Commonwealth's attorney to do so, Burno refused to file a PCRA petition while he still had time.  Thus, Burno failed to exhaust his state court remedies, and given that he is now time-barred from filing a PCRA petition, the IAC claims are procedurally defaulted.  *See* 42 Pa. Cons. Stat. Ann. § 9545(b) (petition must be filed within one year of the date the judgment becomes final).

Moreover, Burno has not provided any reason for the Court to excuse the procedural default.  Again, to excuse default, Burno must "[1] demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or [2] demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488.  To show that a fundamental miscarriage of justice would result from the court's failure to consider a claim, the petitioner must present new, reliable evidence that he is innocent and demonstrate that, in light of that new

evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 324–327.

Burno cannot show cause and prejudice to excuse him from procedural default. Respondents and the Court urged Burno several times to assert his IAC claims in a PCRA petition. *See supra* note 2. Burno nonetheless chose not to file a PCRA petition because he "believe[d] that [he] had the right to be before this court." (Sept. 27, 2017 Hr'g Tr. 17:7–25.) The default here is directly caused by Burno's own decisions and is not the product of any factor external to himself. It cannot be excused on that basis. His argument that the Court's failure to consider his IAC claims will result in a miscarriage of justice also fails, because he has not demonstrated that there is any new evidence in this case.

### 3

The Court also understands Burno to make an additional argument that he never should have been required to pursue the PCRA process in the first place, because the Supreme Court of Pennsylvania's application of *Holmes* was not an adequate procedural rule to support default. Burno specifically refers to the state supreme court as illegitimately implementing the "ex post facto . . . rules recently founded" in *Holmes*. (Br. Supp. Pet. 9.)

"Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address

those claims in the first instance." *Coleman*, 501 U.S. at 731–32.  Where this occurs,

the federal *habeas* court will not review a claim that the state court rejected if the

decision to do so "rests on a state law ground that is independent of the federal question

and adequate to support the judgment." *Walker*, 562 U.S. at 316 (quoting *Coleman*, 501

U.S. at 729–30).  A state procedural rule is "independent" if it does not depend on

answering any federal constitutional question. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)

("[W]hen the resolution of the state procedural law question depends on the federal

constitutional ruling, the state-law prong of the court's holding is not

independent . . . .").  And a state rule of procedure is "adequate" if it is firmly

established and regularly applied with some consistency at the time the state court

applied it. *Bronshtein v. Horn*, 404 F.3d 700, 707 (3d Cir. 2005).  Whether a procedural

rule "was firmly established and regularly applied is determined as of the date the

default occurred, and not as of the date the state court relied on it, because a petitioner

is entitled to notice of how to present a claim in state court." *Albrecht v. Horn*, 485 F.3d

103, 115 (3d Cir. 2007) (internal citations omitted).

    The Supreme Court of Pennsylvania's application of *Holmes* stems from *Grant*, a

2002 state supreme court decision that set forth the general rule that a defendant

"should wait to raise claims of ineffective assistance of trial counsel until collateral

review." *Grant*, 813 A.2d at 783.  A year later in *Commonwealth v. Bomar*, 826 A.2d

831 (Pa. 2003), the court acknowledged an exception to *Grant*, allowing for

ineffectiveness claims to be reviewed on direct appeal "where the concerns that arose in

*Grant* did not exist, *i.e.*, where there was a trial court opinion addressing the claims of

ineffective assistance of counsel and there was an adequate record devoted to the

ineffectiveness claims." *Commonwealth v. Fears*, 836 A.2d 52, 59 (Pa. 2003).  In 2013, while Burno's first direct appeal was pending, the Supreme Court of Pennsylvania issued the *Holmes* decision, which sharply limited the exception afforded in *Bomar*. *Holmes* reaffirmed the general rule that ineffectiveness claims must be reserved for post-conviction review, with only a narrow exception existing if good cause is shown and the defendant provides a knowing and express waiver of his right to seek PCRA review. *See Holmes*, 79 A.3d at 578.

Although the rule announced in *Holmes* is "independent" of federal law, the application of the rule to Burno's first direct appeal in 2014 was unlikely "adequate" because the year-old rule had not yet been "firmly established."  *See Albrecht*, 485 F.3d at 115.  The adequacy test ensures that federal review of a claim is "not barred unless a habeas petitioner had fair notice of the need to follow a state procedural rule." *Bronshtein*, 404 F.3d at 707.  Moreover, the novelty of a new rule is a disfavored way to defeat claims that are unpopular on the merits.  *Id*. at 708.

Even if the rule in *Holmes* was not adequate when applied to Burno's IAC claims, Burno's claims were never "barred" or "defaulted" because he was not without an available state court remedy.  Indeed, the effect of *Holmes* was to provide Burno another state court avenue to raise his ineffectiveness claims, and he had the opportunity to do so but repeatedly refused.  *Cf. Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016) (per curium) (involving facts where the California Supreme Court's denial of the prisoner's petition based on an independent and adequate rule barred *all future state-court review* of claims); *Coleman*, 501 U.S. at 730 (explaining that procedural default occurs when a "state court decline[s] to address a prisoner's federal claims" and

involving facts where the Virginia Supreme Court dismissed petitioner's claims without leaving any other avenue for state court review of them).

C

In Claim I of the Petition, Burno alleges that the Supreme Court of Pennsylvania's "denial of the Petitioner's interlocutory appeal as of right was an illegal abrogation which denied him review of the merits upon a constitutional claim" in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution. (Br. Supp. Pet. 9). This claim refers to the Supreme Court of Pennsylvania's 2014 opinion, in which the court dismissed Burno's ineffective assistance of counsel claims without prejudice and remanded his remaining claims to the trial court. *See Burno*, 94 A.3d 956.

The Court understands the crux of Burno's argument to be two-fold: First, Burno argues that the court in 2014 should have ruled on the merits of all his claims. To couch this in terms of a federal *habeas* issue, Burno now alleges that the 2014 opinion had the effect of denying him a protected liberty interest under the Due Process Clause and violating his rights under the Equal Protection Clause of the Fourteenth Amendment. (Br. Supp. Pet. 20–24.) Second, Burno asserts that because it took the court more than three years after briefing and oral argument to issue its 2014 opinion, this delay violated his Sixth Amendment and due process rights to a speedy appeal. (Pet. Supp. Br. 24–27.)

1

Burno failed to exhaust his constitutional arguments in Claim I. *See* 28 § 2254(b)(1)(A) (requiring petitioner to "exhaust[] the remedies available in the courts of

25

the State").  Again, to satisfy exhaustion, the petitioner must "fairly present" both the facts and federal legal theory of his federal *habeas* claims in state court.  *O'Sullivan*, 526 U.S. at 848.  To the extent that Burno argues that the Supreme Court of Pennsylvania's misapplication of Pennsylvania Rule of Appellate Procedure 311(a)(6) and *Holmes* violated his federal due process and/or equal protection rights, Burno never raised these issues in his second direct appeal or through the PCRA process.  Neither did Burno raise his Sixth Amendment and due process arguments in any state court proceeding.  This is the first time that Burno has raised any of these federal legal theories, and because the time has elapsed to raise these issues in state court, they are procedurally defaulted.

2

The Court nonetheless disposes of Burno's arguments on the merits.  *See* 28 U.S.C. § 2254(b)(2).  There is no constitutional right to a direct appeal.  *Ross v. Moffitt,* 417 U.S. 600 (1974).  But there are constitutional restraints placed upon states when they choose to create appellate review.  *Smith v. Robbins,* 528 U.S. 259, 270 (2000).  The core of Burno's argument is that it was constitutionally improper for the state court to require him to delay the appellate review of his ineffective assistance of counsel claims until collateral review.  But there is no constitutional requirement that ineffective assistance of counsel claims must be reviewed during direct appellate review.  As the Supreme Court of Pennsylvania noted when it determined that it was most prudent to defer review of ineffective assistance of counsel claims until collateral review, "[m]ost jurisdictions considering this issue, however, express a clear preference

26

that ineffectiveness claims be raised in collateral review proceedings." *Grant*, 813 A.2d at 734.

With respect to Burno's Fourteenth Amendment liberty interest argument, the liberty interest he claims to have been denied was his unequivocal right to a direct appeal under Pennsylvania Rule of Appellate Procedure 311(a)(6).[6]  According to Burno, the 2014 opinion caused him to suffer the "loss" of his direct appeal "forever."  (Br. Supp. Pet. 20.)  This argument fails for both legal and factual reasons.  First, the court's application of *Holmes*—which had the effect of remanding Burno's claims on direct appeal—is a state law issue not cognizable on federal *habeas* review.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  Moreover, the procedural and factual history of Burno's case demonstrates that his right to appeal was not lost to him forever; indeed, the Supreme Court of Pennsylvania heard Burno's direct appeal and decided his claims on the merits in its 2017 opinion.  *See Burno*, 154 A.3d 764.

Burno next argues that the Supreme Court of Pennsylvania violated his rights under the Equal Protection Clause of the Fourteenth Amendment when it dismissed his claims without prejudice in the 2014 opinion for "arbitrary, vindictive and malicious reasons."  (Br. Supp. Pet. 22.)  In attempt to show that he suffered irrational treatment, Burno cites other Pennsylvania court decisions involving Rule 311(a)(6).  *See* (*id.* at 22–23).  Yet all of those cases were decided before *Holmes*, and the Supreme Court of Pennsylvania had a legitimate objective when it applied *Holmes*—that is, deferring

---

[6]     Pennsylvania Rule of Appellate Procedure 311(a)(6) allows an appeal as of right in a "criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge."  The Supreme Court of Pennsylvania's 2014 *Burno* decision reversed the trial court's order granting a new trial because Burno's IAC claims should have been deferred for PCRA review.  Therefore, Rule 311(a)(6) no longer applied to Burno because his criminal proceeding no longer involved a new trial.

ineffective assistance claims to the PCRA process.  Burno therefore fails to make a showing of any irrational or differential treatment afforded to him by the Supreme Court of Pennsylvania.

With respect to Burno's final allegation that the Supreme Court of Pennsylvania violated his right to a speedy appeal, the Court acknowledges the lengthy amount of time between when Burno filed his first direct appeal in 2009 and when the court issued its opinion in 2014.  Yet on *habeas* review, this delay provides no basis for relief.

Burno relies on *Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir. 1987), *abrogated by Betterman v. Montana*, 136 S. Ct. 1609 (2016), to advance his speedy appeal arguments.  *Burkett* held that the Speedy Trial Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment protect against post-verdict delays. *Id.* at 1220, 1222 (holding that the proper test to assess Due Process and Speedy Trial Clause violations related to post-verdict delays is the four-factor test in *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

The United States Supreme Court has since abrogated *Burkett*, holding that the Sixth Amendment's Speedy Trial Clause does not apply to post-conviction proceedings. *Betterman*, 136 S. Ct. at 1613.  The *Betterman* Court left open the possibility, however, that a defendant could raise a speedy appeal claim on due process grounds, explaining that "[a]fter conviction, a defendant's due process right to liberty, while diminished, is still present."  *Id.* at 1617.  *Betterman*, however, does not constitute clearly established law which would form the basis of *habeas* relief on due process grounds; indeed, the Court did not even rule on that issue.  To the extent that *Burkett* remains good Third Circuit precedent with respect to its due process holding, circuit court precedent cannot

form the basis of *habeas* relief because it is not "clearly established Federal law, as determined by the Supreme Court of the United States." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1); *see also Simmons v. Beyer*, 44 F.3d 1160, 1169 (3d. Cir. 1995) (explaining "the Supreme Court has not explicitly recognized a criminal defendant's right to a speedy appeal").

## D

In Claim II, Burno alleges that his right to a speedy trial was denied in violation of (1) Pennsylvania Rule of Criminal Procedure 600, (2) Article 1, § 9 of the Pennsylvania Constitution and (3) the Sixth Amendment of the U.S. Constitution. (Br. Supp. Pet. 38–39.) He also alleges ineffective assistance of counsel for prior counsel's failure to raise this claim.[7] (*Id.* at 48.)

### 1

Approximately three-and-a-half years elapsed between Burno's arrest on September 13, 2003 and the start of his trial on February 12, 2007. The trial was initially scheduled for June 7, 2004.[8] (Scheduling Order, Dec. 1, 2003, No. CR-39-CR-0003637-2003.) A suppression hearing was held on June 2, 2004, during which Burno's attorney told the trial court of the defense's plan to call ADA Dantos as a witness for trial and moved to recuse her from the case. (June 2, 2004 Hr'g Tr. 6:1–9, No. CR-39-CR-0003637-2003.) The trial court reserved judgment on the issue that day. (*Id.* 9:13–17.) On April 13, 2005, Burno again moved to disqualify the prosecutor. (Apr. 18, 2005

---

[7]     To the extent that Burno presents an IAC claim in Claim II, this claim is procedurally defaulted for the reasons explained in Section III.B.

[8]     Because Burno has never objected to the first year's worth of pre-trial criminal proceedings in his counseled direct appeal or his *pro se* Petition, the Court is not reviewing that first year of pre-trial proceedings in detail.  *See* (Brief for Appellant at 52–55, *Burno*, 154 A.3d 764, No. 716 CAP; Br. Supp. Pet. 30–35).

Hr'g Tr. 37:22–25, No. CR-39-CR-0003637-2003.)  Five days later—on the day trial was scheduled to begin—the trial court granted the motion, removing ADA Dantos as the lead prosecutor and relegating her to second chair.  (*Id.* 40:16–20.)  Given this last-minute ruling, the court granted the Commonwealth's request to postpone the trial for one week.  (*Id.* 43:1–2.)

The Commonwealth filed a motion to reconsider the court's ruling, (Mot. to Reconsider, Apr. 19, 2005, No. CP-39-CR-0003637-2003), which the trial court denied. (Order, Apr. 20, 2005, No. CP-39-CR-0003637-2003.)  The Commonwealth appealed to the Superior Court.[9]  (Notice of Appeal, Apr. 21, 2005, No. CP-39-CR-0003637-2003.)  A year later, the Superior Court reversed the trial court, reinstating ADA Dantos as lead prosecutor.  *See Commonwealth v. Burno*, 902 A.2d 973 (Pa. Super. Ct. 2006).

Just days later, in May of 2006, Burno's counsel filed a motion to withdraw because of a conflict.  (Mot. to Withdraw, May 1, 2006, No. CP-39-CR-0003637-2003.) Burno received new counsel in June of 2006, and trial was scheduled for November 13, 2006.  (Order, June 23, 2006, No. CP-39-CR-3637-2003.)  In October of 2006, Burno's counsel requested and received a continuance, and the trial was delayed until February 12, 2007.  (Order, Oct. 23, 2006, No. CP-39-CR-0003637-2003.)  Jury selection began as scheduled and was concluded on February 26, 2007.  The jury heard the case and

---

[9]     Burno contends that the Commonwealth acted without due diligence in pursuing the interlocutory appeal to the Superior Court because the Commonwealth lacked jurisdiction to appeal pursuant to Pennsylvania Rules of Appellate Procedure 311(d) and 313.  *See* (Br. Supp. Pet. 28–29). The Supreme Court of Pennsylvania did not decide the jurisdictional issue when it decided the Rule 600 speedy trial appeal and "observe[d] nothing to suggest that the Commonwealth did not act with due diligence."  *Burno*, 154 A.3d at 794.  This is a finding on a point of state law, which is binding here.  *Estelle*, 502 U.S. at 67–68.

returned a guilty verdict on March 5, 2007, and Burno was sentenced to death three days later.

2

The Sixth Amendment guarantees criminal defendants the right to a speedy trial.  U.S. Const. amend. VI.  The Supreme Court incorporated this right in *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967), and the Pennsylvania Constitution also guarantees the right to a "speedy public trial."  Pa. Cons. art. I, § 9.  Pennsylvania enforces the speedy trial guarantee through Pennsylvania Rule of Criminal Procedure 600.  *Commonwealth v. Baird*, 975 A.2d 1113, 1119 (Pa. 2009) (explaining that "Rule 600 was designed to comport with the constitutional standards set forth by the United States Supreme Court").  Under Rule 600, the Commonwealth generally must bring the defendant to trial within 365 days of a criminal complaint being filed.  Pa. R. Crim. P. 600(A)(2)(a); *Commonwealth v. Solano*, 906 A.2d 1180, 1188 (Pa. 2006) (recognizing that Rule 600 applies in capital cases).

i

Turning first to Burno's challenges to his speedy trial rights under state law, the Court rejects both his Rule 600 and Pennsylvania Constitution claims because they are not cognizable in a federal *habeas* proceeding.  *Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations of state-law questions.").  In considering Burno's Rule 600 argument, the Third Circuit has explained that, even when a state's procedural rule is "intended as a guide to implement a federal constitutional guarantee," a federal *habeas* court may not take "cognizance of non-constitutional harm."  *Wells v. Petsock*, 941 F.2d 253, 256 (3d. Cir.

1991) (refusing to consider a 180-day rule when assessing a Sixth Amendment speedy

trial claim).  Notwithstanding Rule 600, "Pennsylvania's prompt trial rule 'does not

define the contours of the federal constitutional right to a speedy trial.'"  *Drew v. Wetzel*,

2017 WL 1326141, at *3 (E.D. Pa. April 11, 2017) (quoting *Wells*, 941 F.2d at 256).

Burno's argument that his speedy trial rights were violated pursuant to the

Pennsylvania Constitution is also based on state law rather than federal law, and is not

a proper basis for federal *habeas* review.  *See Estelle*, 502 U.S. at 68; *Cann v. Bickle*,

2011 WL 7644037, at *7 (E.D. Pa. Mar. 30, 2011) (explaining that the Pennsylvania

Constitution's right to speedy trial was not the proper subject for *habeas* review), *aff'd*,

2012 WL 1957431 (E.D. Pa. May 31, 2012) (adopting report and recommendation).

ii

Burno also contends that the Commonwealth denied him his Sixth Amendment

right to a speedy trial.  His brief properly cites *Barker v. Wingo*, 407 U.S. 514 (1972) in

support of this claim. (Br. Supp. Pet. 39.)  Sixth Amendment speedy trial violations are

cognizable claims on federal *habeas* review.  *See Barker*, 407 U.S. 514.  But in Burno's

case, he failed to exhaust his Sixth Amendment speedy trial claim and he would now be

precluded from bringing the federal claim in state court due to the PCRA one-year time

bar, so this claim is procedurally defaulted.  *See* 42 Pa. Cons. Stat. § 9545(b)(1).

A federal *habeas* court may not grant a petition for a writ of *habeas* corpus unless

the petitioner has exhausted his remedies in state court.  28 U.S.C. § 2254(b)(1)(A).

Importantly, "it is not enough that all the facts necessary to support the federal claim

were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  Both the factual

basis and federal legal theory must be fairly presented to the state court in order to

satisfy AEDPA's exhaustion requirement.  *McCandless*, 172 F.3d at 261.  A claim is not fairly presented if the state court "must read beyond a petition or brief."  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  To fairly present a claim, a "petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."  *McCandless*, 172 F.3d at 261.  In *Evans v. Court of Common Pleas, Del. Cty., Pa.*, 959 F.2d 1227 (3d Cir. 1992), the Third Circuit held that a petitioner could alert a state court of the presence of a federal claim, as opposed to a claim raised under state law, without "citing chapter and verse of the Constitution," through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Evans*, 959 F.2d at 1232 (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)).

On direct appeal, Burno never raised a federal Sixth Amendment speedy trial argument.  *See* Brief for Appellant at 52–60, *Burno*, 154 A.3d 764 (No. 716 CAP) (raising the speedy trial issue only in terms of Rule 600).  In Burno's counseled brief to the Supreme Court of Pennsylvania, the heading for the speedy trial issue directed the court's attention solely to a Rule 600 claim.  *Id.* at 52.  In the conclusion of the argument, counsel against focused only on Rule 600 and did not mention the Sixth Amendment or *Barker*.  *Id.* at 60.  Moreover, the content of Burno's speedy trial argument in his direct appeal brief relies exclusively on Pennsylvania precedent and provides no citation to *Barker* or other federal cases "that might have alerted the court to the alleged federal nature of the claim."  *Baldwin*, 541 U.S. at 33.  At one point in the

direct appeal brief, Burno does reference "federal constitutional speedy trial provisions," but he does so only in the context of describing that such a claim was made to the trial court.  Brief for Appellant at 54, *Burno*, 154 A.3d 764 (No. 716 CAP).

Burno also cannot argue that the standards for adjudicating a Rule 600 and a federal speedy trial claim are "identical."  *See Baldwin*, 541 U.S. at 33.  Analysis of Rule 600 violations focuses on a 365-day time limit and requires state courts to consider whether delays were "excludable," whereas the Sixth Amendment *Barker* analysis involves a four-part balancing test.  *Compare Solano*, 906 A.2d 1180, *with Barker*, 407 U.S. 514.  The standards for adjudicating the state and federal claims, therefore, are far from identical and require distinct analyses.  Because Burno did not "fairly present" the federal claim to the state court, he failed to exhaust his remedies for the federal speedy trial claim, and it is procedurally defaulted.

Additionally, after reviewing the pleadings, the Court discerns no basis to excuse Burno's default. A procedurally defaulted claim may not be reviewed unless a petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or [unless he] demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  Again, "cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488.  It is petitioner's burden to prove his allegations of cause and prejudice. *Coleman*, 501 U.S. at 750.

If Burno were to argue that the default of the claim was caused by appellate counsel's ineffectiveness, that effort would fail.  Such an allegation may provide a basis

to excuse a default, *Murray,* 477 U.S. at 488, but an allegation of appellate counsel ineffectiveness must itself be exhausted before it may be used to establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).  Although Burno had an opportunity to present this allegation to the state court during his PCRA proceedings, he chose not to do so.  Since the allegation of appellate counsel's ineffectiveness is itself unexhausted, it cannot provide a basis to excuse the default.

### iii

Notwithstanding Burno's failure to exhaust his federal speedy trial claim, the Court addresses it on the merits.  *See* 28 U.S.C. § 2254(b)(2).  Sixth Amendment speedy trial claims are governed by *Barker*, and in determining whether a defendant's speedy trial rights were violated, courts balance four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant.  *Barker*, 407 U.S. at 530.  The length of the delay presents "the threshold question" that "trigger[s] analysis of the remaining factors." *United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014). Once a *Barker* analysis has been triggered, all four factors are weighed together, and no one factor is dispositive.  *Barker,* 407 U.S. at 533; *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993).  Both the prosecution and defense's conduct are relevant. *Barker*, 407 U.S. at 530.

The first *Barker* factor—the length of the delay—presents a "double enquiry." *Doggett v. United States,* 505 U.S. 647, 652 (1992).  The defendant must first "trigger" the speedy trial analysis by showing the gap of time between arrest and trial has "cross[ed] the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Id.*

at 651–652.  Once the defendant makes the initial showing to trigger judicial

examination, the court must also consider the length of delay as one of the four factors,

with the "presumption that pretrial delay has prejudiced the accused intensifies over

time." *Id*. at 652.  Longer delays can be tolerated "when the crime is very serious or

complex." *Wells*, 941 F.2d at 257 (citing *Barker*, 407 U.S. at 531).

Here, roughly three years and five months elapsed between Burno's arrest on

September 13, 2003 and his trial on February 12, 2007.  This is enough time to trigger

the speedy trial inquiry and it weighs in Burno's favor of finding a speedy trial

violation. As the Third Circuit has explained, however, "a long delay is not sufficient by

itself to establish a Due Process violation if other *Barker* factors do not weigh in

petitioner's favor." *United States v. Oidac*, 486 F. App'x 318, 332 (3d Cir. 2012)

(unpublished) (involving a twelve-year delay).

The second factor of the *Barker* test considers the "reason for the delay." *Barker*,

407 U.S. at 530. *Barker* categorized delays into three types and assessed their relative

weights.  First, "a deliberate effort by the Government to delay trial" in order to

"hamper the defense" weighs heavily against the government. *United States v. Battis*,

589 F.3d 673, 679 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 531).  Second, "a 'more

neutral reason such as negligence or overcrowded courts'" also weighs against the

government but "less heavily." *Id*. (quoting *Barker*, 407 U.S. at 531).  And third, delay

caused by the defendant or the defendant's counsel weighs against the defendant. *Id*.

In evaluating the length of the delay, the Court subtracts the amount of delay

caused by Burno from the delay caused by the Commonwealth. *See Battis*, 589 F.3d at

680.  In this case, trial was initially set to begin on June 7, 2004.  (Scheduling Order,

June 7, 2004, No. CP-39-CR-0003637-2003).  As a result of a joint continuance sought

by Burno and the prosecutor, trial was continued until September 13, 2004.  (Order,

March 12, 2004, No. CP-39-CR-0003637-2003).  Later on, Burno's defense counsel

sought to withdraw from the case.  (Motion to Withdraw, June 12, 2006, No. CP-39-CR-

0003637-2003).  The court granted the motion and appointed Burno new counsel, who

then sought and was granted a three-month continuance, pushing back trial from

November 13, 2006 to February 12, 2007.  *See* (Order Granting Motion to Withdraw,

June 23, 2006; Notice of Trial, Oct. 4, 2006; Order, Oct. 23, 2006, No. CP-39-CR-

0003637-2003.)  Thus, defense requests for continuances account for sixth months of

delay.

      The delay that Burno principally challenges—both in his direct appeal and in his

*habeas* Petition—is the year-long delay from April 21, 2005 until April 21, 2006.  On

April 13, 2005, Burno moved to disqualify the prosecutor on the ground that he

intended to call ADA Dantos as a trial witness.  (Apr. 18, 2005 Hr'g Tr. 37:22–25, No.

CR-39-CR-0003637-2003.)  The trial court granted the motion, removing ADA Dantos

as the lead prosecutor and relegating her to second chair.  (*Id.* 40:16–20.)  The

Commonwealth appealed the decision to the Superior Court, (Notice of Appeal, Apr. 21,

2005, No. CP-39-CR-0003637-2003), and a year later, the Superior Court reversed the

trial court, reinstating ADA Dantos as lead prosecutor.  *See Commonwealth v. Burno*,

902 A.2d 973 (Pa. Super. Ct. 2006).  The Supreme Court of Pennsylvania later

concluded that the appeal was pursued with due diligence and "without unnecessary

delay."  *Burno*, 154 A.3d at 794.  Considering that the Commonwealth prevailed on an

appeal that was initiated by Burno's original motion to recuse, the Commonwealth's "valid reason" for the appeal "justi[fies] appropriate delay." *Barker*, 407 U.S. at 531.

The third *Barker* factor considers whether Burno asserted his right to a speedy trial. Evidence that the right was never asserted makes it "difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531–32. Depending on how the defendant asserts the right, courts may assign this factor more or less weight. For example, when the defendant is represented by counsel, "he should identify 'a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success.'" *Battis*, 589 F.3d at 681 (quoting *Hakeem*, 990 F.2d at 766). A less formal assertion, like a letter addressed to the trial court, is weighted less heavily for the defendant. *Id.*

On October 27, 2006, Burno, in a counseled pre-trial motion, sought dismissal of his charges on Sixth Amendment and Rule 600 grounds, *see* (Omnibus Pretrial Mot., Oct. 27, 2006, No. CP-39-CR-0003637-2003), and the trial judge denied the motion. *See* (Order, Feb. 5, 2007, No. CP-39-CR-0003637-2003). Just eleven days before Burno asserted his speedy trial rights, however, defense counsel had filed an "Application for Continuance," stating that "Mr. Burno is in agreement with the continuance in order for us to have sufficient time to prepare" for trial. (Application for Continuance, Oct. 18, 2006, No. CP-39-CR-0003637-2003). The closeness in time between Burno seeking a continuance and then asserting his speedy trial rights suggests that Burno may not have been ready to proceed with trial at the time he asserted his Sixth Amendment right. *See Hakeem*, 990 F.2d at 764–65 ("Where, through contrary actions, a defendant evidences an unwillingness to commence with the trial requested, the request carries

minimal weight."). The Court therefore places little, if any, weight on Burno's assertion of his Sixth Amendment speedy trial right.

The final *Barker* factor to consider is the prejudice to the defendant. Courts must assess prejudice to a defendant "in light of the interests . . . which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. "A defendant can establish specific prejudice by showing that he was subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay." *Battis*, 589 F.3d at 682 (quoting *Barker*, 407 U.S. at 532). In *Doggett*, however, the Court held that "consideration of prejudice is not limited to the specifically demonstrable," allowing defendants to claim prejudice without "affirmative proof of particularized prejudice." *Doggett*, 505 U.S. at 655. Moreover, the Court stated that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* This presumption of prejudice can be mitigated by the defendant's acquiescence in the delay or rebutted by the government's affirmative proof that the delay did not impair the accused's ability to defend himself. *Battis*, 589 F.3d at 682 (citing *Doggett*, 505 U.S. at 658 & n.1).

Burno makes no argument that he suffered specific prejudice in the form of oppressive pre-trial incarceration or anxiety, but rather claims that he was prejudiced because his trial strategy was impaired. According to Burno, he had a "comprehensive trial strategy" of calling Akita Allsop, Terrence Bethea, and Maria Dantos as witnesses. (Br. Supp. Pet. 41.) According to Burno, (1) Allsop—who is Bethea's sister-in-law— would testify that Bethea confessed to her that he was the sole murderer; (2) Bethea

would be confronted with a handwritten note confessing his guilt to Burno; and (3) ADA Dantos would serve as witness to support his coerced confession argument.  (Br. Supp. Pet. 42.)  However, Burno later attributes these "lost" witnesses to a change in his defense counsel's strategy rather than because of the delay.  (Br. Supp. Pet. 42.)  Burno also claims that the delay caused him a loss of two exculpatory documents he planned to use at trial. (Br. Supp. Pet. 46–47.)  Yet Burno later explains that it was his defense counsel's failure to "appreciate the significance" of the documents, rather than the delay, that altered his defense strategy.  (Br. Supp. Pet. 44.)

The Court also considers the possibility that Burno suffered from presumed prejudice.  *In Battis*, the Third Circuit held that a forty-five-month delay in bringing a defendant to trial is presumptively prejudicial.  589 F.3d at 683.  Here, approximately forty-one months (1,248 days) elapsed between Burno's arrest and the trial, which the Court concludes is sufficient to presume prejudice.  *See, e.g.*, *United States v. Erenas-Luna*, 560 F.3d 772, 777 (8th Cir. 2009) (presuming prejudice with a three-year delay). However, this presumption is mitigated by Burno's acquiescence in the delay, considering that Burno—through his counsel—sought trial continuances at least twice. *See* (Order, Mar. 12, 2004; Order Granting Mot. for Continuance, Oct. 23, 2006, No. CP-39-CR-0003637-2003.)

In weighing the four *Barker* factors, the Court determines there to be no speedy trial violation.   Although the length of the delay of three-and-a-half years weighs in Burno's favor, the longest reason for the delay—the Commonwealth's interlocutory appeal—was decided in the Commonwealth's favor, pursued with "due diligence" and cannot be held against the government. *Burno*, 154 A.3d at 794.  Additionally, the

Court places little weight on the fact that Burno asserted his Sixth Amendment speedy trial right because it was made in close temporal proximity to a request for continuance, suggesting he was not prepared to go to trial.  And lastly, Burno's argument that the delay impeded his defense seems contradictory to his argument that the decision not to call witnesses and not to pursue the "missing" documents was the product of a change in defense counsel's strategy rather than a result of the delay.  Thus, although Burno's claim is procedurally defaulted, it also fails on its merits.  *See* 28 U.S.C. § 2254(b)(2).

E

In Claim III of his Petition, Burno argues that the Pennsylvania courts violated his rights of "access to courts, self-representation, due process, and equal protection" when they required him to accept hybrid representation as opposed to proceeding *pro se* on his post-trial motions and direct appeal.  (Br. Supp. Pet. 50.)  Burno concedes from the outset that there is no federal constitutional right to self-representation on appeal, and he cites *Martinez v. Court of Appeal of California*, 528 U.S. 152 (2000), to that effect.  (Br. Supp. Pet. 70.)  Yet he argues that 28 U.S.C. § 1654 provides a statutory guarantee to proceed *pro se* on appeal in state court, and that the state courts violated this right.  (*Id.*)

1

Following Burno's conviction and sentence, he repeatedly sought to represent himself on his post-trial motions and direct appeal.  A review of the state court docket shows that Burno moved to terminate counsel and/or proceed *pro se* no less than ten

41

times following his conviction.[10]  The trial court denied Burno's requests.[11]  In doing so, the trial court reasoned: "[Burno] indicated a lack of understanding, indeed confusion, regarding the consequences of foregoing a motion under the P.C.R.A. and filing a writ of habeas corpus in Federal Court.  For all of those reasons, it cannot be said his motion [to proceed *pro se*] was timely, unequivocal, or made knowingly or intelligently."  (Mem. Op. at 12, Sept. 28, 2015, No. CP-39-CR-000367-2003.)  Once on direct appeal to the Supreme Court of Pennsylvania, Burno filed a "Pro Se but Undocketed Application to Discharge Counsel, Represent Himself, and Waive the Mandatory Appeal." (Application, Nov. 18, 2015, No. 716 CAP.)  The court denied this request in a *per curium* order.  (Order*,* Mar. 17, 2016, No. 716 CAP.)  After the Supreme Court of Pennsylvania issued its 2017 decision denying Burno relief on direct appeal, he refused to pursue the PCRA process to challenge the "forced" hybrid representation in his post-sentence and appellate proceedings.

2

*Habeas* petitioners must "fairly exhaust" their claims in state court by including in the "petition or brief (or a similar document)" the federal nature of the issue. *Baldwin*, 541 U.S. at 32.  Burno's "Pro Se but Undocketed Application to Discharge

---

10    *See, e.g.*, *Pro Se* Motion to Terminate Counsel's Representation, Aug. 27, 2007, No. CP-39-CR-0003637-2003; *Pro Se* Motion to Terminate Counsel's Representation, April 22, 2008; Order and *Pro se* Request for *Grazier* Hearing, Nov. 17, 2008; *Pro Se* Notice to Court Renewal of Previous Motion, Jan. 28, 2009; *Pro Se* Motion for Recusal, Jan. 28, 2009; Motion to Proceed *Pro Se*, July 22, 2009; *Pro Se* Motion to Dispense with Court-Appointed Counsel and to Proceed *Pro Se*, Aug. 21, 2009; Counsel in Contempt of Court, May 23, 2011; Motion to Dispense with Counsel and Proceed *Pro Se*, July 8, 2014; Motion to Dispense with Counsel and Proceed *Pro Se*, Sept. 9, 2014.

11    *See, e.g.*, Order Denying Motion for Removal of Counsel, Oct. 17, 2007, No. CP-39-CR-0003637-2003; Order Dismissing Defendant's Motion to Terminate Counsel, July 7, 2008; Denying *Pro Se* Petition Filed, Dec. 11, 2009; Order Denying *Pro Se* Request for Relief, Aug. 18, 2011; Order Denying Motion to Dispense with Counsel, July 11, 2014; Memorandum Opinion and Order Denying *Pro Se* Motion to Dispense with Counsel and Proceed *Pro Se*, Sept. 28, 2015.

Counsel" to the Supreme Court of Pennsylvania does not appear to meet the requirements necessary to fairly exhaust his claim. Such a filing lacks the formality of a brief or petition as described in *Baldwin*. *See Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007) ("Pennsylvania courts were not required to search beyond the pleadings and briefs for a federal issue."); *Clements v. Maloney*, 485 F.3d 158, 164 (1d Cir. 2007) ("[W]here a federal claim was not included in a petition, the exhaustion analysis could not encompass materials beyond the petition or brief filed with the state's highest court."). Yet the Court also acknowledges that Burno repeatedly and adamantly sought to proceed *pro se*. Because he was represented by counsel on his direct appeal, Burno may not have had any other avenue to seek relief from the state supreme court except by filing the "Pro Se but Undocketed Application." The Court, however, need not decide the issue of exhaustion, because AEDPA permits a claim to be "denied on the merits, notwithstanding the failure of an applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

Burno's claim fails because the state courts' insistence that he proceed with counsel does not violate any clearly established federal law, as determined by the United States Supreme Court. *See id.* § 2254(d)(1). Burno has no federal constitutional right to proceed *pro se* on appeal. The United States Supreme Court held in *Martinez* that there is no "constitutional right to self-representation on direct appeal from a criminal conviction." 528 U.S. at 163. The *Martinez* Court did explain, however, that states may recognize such a right to proceed *pro se* on appeal. *Id.* Even so, a right

guaranteed only by a state does not create a cognizable issue in a federal *habeas* petition, and Burno's claim therefore remains within the province of state law.[12]

In *Martinez*, the Court explained that its holding "implie[d] no disrespect to the individual inasmuch as it tends to benefit the appellant as well as the court." *Id.* at 163.  Once an accused is convicted, his autonomy interests are less compelling than they were at trial.  *Id.*  The "overriding state interest in the fair and efficient administration of justice," however, remains strong at every stage of the proceeding, thereby allowing for states to conclude in their discretion that "the government's interests outweigh an invasion on the appellant's interest in self-representation." *Id.* The Court's reasoning in *Martinez* applies with particular force to Burno because the procedural requirements of his post-trial proceedings demonstrate the need for defense counsel to ensure a fair and just process.  Had Burno exercised a right to proceed *pro se* on appeal, his efforts would have very likely worked to his legal disadvantage while also undermining the administration of fair, just, and efficient proceedings.

Further, Burno misconstrues the law when he asserts that he has a federal statutory right to proceed *pro se* on appeal in Pennsylvania state courts.  In support of his argument, he cites 28 U.S.C. § 1654, which provides that, "[i]n all courts of the United States the parties may plead or conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  Burno's reliance on this statute is misguided for two reasons.  First,

---

[12]    In any event, the Supreme Court of Pennsylvania has "not directly addressed whether there exists a right to self-representation on direct appeal under the Pennsylvania Constitution." *Commonwealth v. Williams*, 196 A.3d 1021, 1030 n.7 (Pa. 2018); *Commonwealth v. Staton*, 12 A.3d 277, 282 (Pa. 2012) (acknowledging the holding of *Martinez* and assuming, without deciding, that the right exists).

§ 1654 governs federal courts and does not regulate the conduct of Pennsylvania's court system.  Second, as noted in the statute itself, the right to proceed *pro se* is not absolute but remains subject to the "rules of such courts."  *Id.*

F

Claim IV of Burno's *habeas* Petition contends that there was no probable cause to arrest him.  (Br. Supp. Pet. 74–84.)  His argument presents in three parts.  First, Burno argues that "the misrepresentations, falsifications and omissions within the sworn affidavit lacked any probable cause." (*Id.* 74.)  Second, he claims that trial counsel was "ineffective for failing to present and preserve this claim."[13]  (*Id.*)  And third, Burno asserts that the Pennsylvania courts "failed to permit full and fair litigation upon this claim, all in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution." (*Id.*)

1

On September 12, 2003, Burno learned that the police wished to speak with him about Juarbe and Rosado's murders.  *Burno*, 154 A.3d at 771.  Burno turned himself in at the Allentown police station, and he was arrested upon a warrant, with a supporting affidavit of probable cause submitted by Detectives Miller and Simock.  (Affidavit, Sept. 13, 2003, CP-39-CR-0003637-2003.)  The affidavit contained twenty-one paragraphs detailing the crime scene and the investigation that followed.  (*Id.*)  The affidavit explains that detectives received a statement from a witness who observed a maroon or red car occupied by two unknown individuals flee the area after gunshots were heard.  (*Id.* ¶ 4.)  It also states that DNA evidence taken from the crime scene led to the arrest

---

[13]     To the extent that Burno presents an IAC argument in Claim IV, this claim is procedurally defaulted for the reasons explained in Section III.B.

of Terrence Bethea.  (*Id.* ¶ 13.)  Once Bethea was arrested, he implicated Burno in the

murders, including the fact that Burno was inside the apartment.  (*Id.* ¶ 17.)  The

affidavit also includes information detectives learned from Bethea's wife: in the early

hours of April 13, 2003, Bethea and Burno came to Bethea's apartment, where the wife

observed Bethea with a gunshot wound to the leg.  (*Id.* ¶ 18.)  The men refused to tell

her what happened, and the trio drove in a maroon-colored car to a Philadelphia

hospital.  (*Id.*)  The affidavit also noted that Burno and his wife owned a red Hyundai

Accent.  (*Id.* ¶ 20.)

Burno argues that of the twenty-one averments in the affidavit, only two of them

expressly mention him.  (Br. Supp. Pet. 78.)  And because the statements "alleg[e]

nothing more than that he was merely present at the scene of the crime and then left,"

Burno contends that this cannot satisfy the probable cause standard.  (*Id.*)  He also

claims that the affidavit is constitutionally deficient because the detectives provided

false information or withheld material information from the magistrate judge.  (*Id.* at

79.)  Burno appealed the issue to the Supreme Court of Pennsylvania, but the court

concluded that the information contained within the affidavit was sufficient to support

a finding of probable cause and any alleged misrepresentations by the detectives did

not "upset that calculus."  *Burno*, 154 A.3d at 782.

2

Burno's arguments that (1) the arrest warrant lacked probable cause, and (2)

that the detectives deliberately withheld exculpatory information from the magistrate

judge are both rooted in Fourth Amendment violations.  *Illinois v. Gates,* 462 U.S. 213,

240 (1983) (explaining the "essential protection of the warrant requirement of the

46

Fourth Amendment" is probable cause); *Franks v. Delaware*, 438 U.S. 154, 165–66

(1978) (noting that where the "Fourth Amendment demands a factual showing

sufficient to comprise 'probable cause,' the obvious assumption is that there will be a

*truthful* showing" (internal quotation marks omitted)).

Generally, however, Fourth Amendment claims are not cognizable on federal

*habeas* review.  In *Stone v. Powell*, the Supreme Court held that "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim, a

state prisoner may not be granted federal habeas corpus relief on the ground that

evidence obtained in an unconstitutional search or seizure was introduced at his trial."

428 U.S. 465, 494 (1976); *Marshall v. Hendricks*, 307 F.3d 36 (3d Cir. 2002) (applying

*Stone* in a post-AEDPA capital *habeas* case).  As the Third Circuit Court of Appeals has

stated, under *Stone*, "a federal court may not reexamine the state court's determination

that no Fourth Amendment violation occurred, that a violation had occurred but that

the introduction of its fruits was harmless, or that any Fourth Amendment violation

that might have occurred had harmless results."  *Gilmore v. Macks*, 799 F.2d 51, 56 (3d

Cir. 1986).  Thus, a Fourth Amendment claim is barred on federal *habeas* review unless

the state failed to provide an opportunity for full and fair litigation.

The Supreme Court did not define what constitutes "an opportunity for full and

fair litigation" of Fourth Amendment claims.  The Third Circuit has assumed, without

deciding, that the opportunity to fully and fairly litigate a claim equates to "providing

procedures by which one can litigate a [F]ourth [A]mendment claim."  *Boyd v. Mintz*,

631 F.2d 247, 250 (3d Cir. 1980); *see United States ex rel. Hickey v. Jeffes*, 571 F.2d 762,

766 (3d Cir. 1978) (finding adequate opportunity to litigate a Fourth Amendment issue

when the trial court heard a pretrial suppression motion, the superior court considered

the issue on appeal, and the supreme court denied allocatur).  For a *habeas* petitioner

to demonstrate the state's failure to provide the requisite opportunity, this generally

requires a "structural defect in the system itself" that prevents the prisoner's claim

from being heard.  *Marshall*, 307 F.3d at 82.

Here, Burno asserts that the Commonwealth denied him the opportunity to fully

and fairly litigate his Fourth Amendment claim.  (Br. Supp. Pet. 77.)  To support his

argument, Burno relies only on the fact that the Supreme Court of Pennsylvania

declined to consider his Fourth Amendment claims in its 2014 opinion.  (*Id.*)  Other

facts in the record, however, conclusively demonstrate that the Commonwealth

provided Burno with ample opportunity to fully and fairly litigate his Fourth

Amendment claims.  First, Burno raised the probable cause issue before the trial court

in a pre-trial motion.  (Omnibus Pretrial Motion, Jan. 7, 2004, CP-39-CR-0003637-

2003.)  The trial court held a hearing and denied the motion.  (Hearing, June 2, 2004;

Order, Apr. 6, 2005, CP-39-CR-0003637-2003.)  Second, as Burno mentions in his brief,

he raised his probable cause argument on direct appeal before the Supreme Court of

Pennsylvania in 2014.  The court dismissed the claim without prejudice and remanded

his pending claims (including the probable cause claim) to the trial court.  *Burno*, 94

A.3d at 978 n.12.  And third, after the trial court disposed of Burno's post-trial motions

on remand, Burno again appealed to Supreme Court of Pennsylvania.  This time, the

court provided a thorough analysis of the Fourth Amendment issues and determined

the warrant was supported by probable cause.  *See Burno*, 154 A.3d at 780–82.  That

both the trial court and the Supreme Court of Pennsylvania considered and ruled on

the Fourth Amendment claim compels the conclusion that Burno had the opportunity to fairly and fully litigate his claim, and he exercised his ability to do so. *See Jeffes*, 571 F.2d at 766.  The fact that Burno's Fourth Amendment challenges were not successful in the state court proceedings does not provide a basis for this Court to disregard *Stone*, and Burno's Fourth Amendment claim is not reviewable.

Finally, to the extent that Burno contends that the alleged lack of probable cause in the arrest warrant led to a coerced and involuntary confession, *see* (Br. Supp. Pet. 81–82), this line of argument is discussed in Section III.H.

G

In Claims V, VI and VII of the *habeas* Petition, Burno argues that statements he made during the second half of his September 26, 2003 interview should have been suppressed.  In Claim VI, Burno contends that his September 26 statements were made during plea negotiations, and as such, that the trial court admitted them based on an "unreasonable application of federal law (Fed. R. Crim. P. 11 and Fed. R. Evid. 410)." (Br. Supp. Pet. 91.)  He also asserts that trial counsel was ineffective for failing to raise this issue, and that the Supreme Court of Pennsylvania denied him due process when it refused to review this claim on the merits in its 2014 opinion.[14]

1

On appeal, the Supreme Court of Pennsylvania found that the trial court erred in concluding that Burno's September 26 statements did not take place during plea

---

[14]    To the extent that Burno presents an IAC argument in Claim VI, this argument is procedurally defaulted for the reasons explained in Section III.B.  Additionally, it is clear from the Supreme Court of Pennsylvania's 2017 opinion that the court reviewed the merits of this claim, determined that the trial court erred, but held that the error was harmless.  *Burno*, 154 A.3d at 782–88.

49

negotiations, and that it erred in admitting the confession under Pennsylvania Rule of Evidence 410(a)(4).  *Burno*, 154 A.3d at 787; *see also* Pa. R. Evid. 410(a)(4) (explaining statements are not admissible when "made during plea discussions with an attorney for the prosecuting authority" if the discussions did not result in a guilty plea).  The court concluded, however, that the error was harmless.  *Burno*, 154 A.3d at 787.

The court explained that harmless error exists if the state can prove any one of the following three:

(1)  the error did not prejudice the defendant or the prejudice was *de minimis*;

(2)  the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or

(3)  the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* (quoting *Commonwealth v. Simmons*, 662 A.2d 621, 633 (Pa. 1995)).  The Supreme Court of Pennsylvania concluded that the second ground for harmless error applied: "[A] full review of this record shows that the tainted evidence (Burno's statements during plea negotiations) was substantially similar to the untainted evidence (his incriminating admissions during phone calls from jail)."  *Id.* at 787.  In making this determination, the court relied on recordings of telephone calls Burno made to his wife Kimberly and acquaintance James Prince Alford from the Lehigh County Jail.  *Id.*  In these conversations, Burno admitted to shooting one victim multiple times, stating that he did not remember how many times he shot him, but that he thought it was three times.  *Id.*  He also admitted to having a 9 mm handgun and "dead[ing] some people."  *Id.*  During the calls, Burno placed himself at the scene of the crime and talked about dismantling and disposing of the weapons.  *Id.*  He also attempted to have his wife

contact co-defendant Bethea in order to get the two defendants' stories straight. *Id.*
Burno acknowledged that he had already "copped to" or confessed to the murders and
he stated that he knew the calls were being recorded but did not care. *Id.*

2

Burno now repeats the same argument he made on direct appeal, but he
reframes it in terms of federal rules violations. He claims that the trial court violated
Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11 when it
admitted his confession during plea negotiations. (Br. Supp. Pet. 91.) Because Burno is
challenging the evidentiary ruling of a state court, however, federal procedural and
evidentiary rules are inapplicable to Burno's *habeas* Petition. Alleged trial court errors
with respect to the application of state evidentiary law generally are non-cognizable for
federal *habeas* relief. *See Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal
habeas court to reexamine state-court determinations of state-law questions.)." The
rule applicable to Burno's claim is Pennsylvania Rule of Evidence 410—not its federal
counterparts. To the extent that Burno asserts the trial court erred, or that the
Supreme Court of Pennsylvania conducted an erroneous harmless error analysis, Burno
merely alleges a state law violation that does not entitle him to federal *habeas* relief.

3

Although state-court evidentiary rulings are generally not cognizable in federal
*habeas* claims, a petitioner may nonetheless be entitled to relief if he can show that the
use of the evidence caused a "fundamental unfairness" at trial in violation of his due
process rights. *See Kontakis v. Beyer*, 19 F.3d 110, 120 (3d Cir. 1994) (citing *Lisenba v.
California*, 314 U.S. 219, 236 (1941)). The United States Supreme Court has "defined

51

the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). And even if a state court's state law evidentiary ruling violates the Constitution, a federal *habeas* court applies the *Brecht v. Abrahamson*, 507 U.S. 619 (1993), harmless error test. *See Kontakis*, 19 F.3d at 120. Under this test, the *habeas* petitioner must show the constitutional error caused "'actual prejudice,' in the form of a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Eley v. Erickson*, 712 F.3d 837, 847 (3d Cir. 2013) (quoting *Brecht*, 507 U.S. at 637)).

Even assuming that the admission of Burno's confession was not simply an error of state evidentiary law, but rather an error of constitutional magnitude, Burno is still not entitled to relief because any error was harmless. When a state court determines that an error is harmless, a "federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Johnson v. Lamas*, 850 F.3d 119, 134 (3d Cir. 2017) (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015)). The Third Circuit in *Johnson* stated that "while *Brecht* subsumes AEDPA's requirement such that we need not formal[ly] apply both *Brecht* and AEDPA/*Chapman*, AEDPA § 2254(d) nevertheless sets forth a *precondition* to the grant of habeas relief." *Id.* at 133 (internal citation and quotation marks omitted). Thus, for a *habeas* petitioner to prevail, he must show that the state court's harmless error decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 134 (quoting *Davis* 135 S. Ct. at 2199).

Here, the Supreme Court of Pennsylvania concluded that the admission of Burno's confession was harmless because it was "merely cumulative evidence of the same incriminating statements" made during his phone calls from jail. *Burno*, 154 A.3d at 788. This Court has no grave doubt about the harmlessness of any error in admitting the confession. In addition to Burno's inculpatory statements on September 26, 2003, the jury also heard recordings of telephone calls Burno made from jail, which had the effect of making the September 26 statements merely cumulative evidence. In the recorded phone calls, Burno provided essentially the same incriminating details to his wife Kimberly and his acquaintance Alford as he did to the detectives. *Burno*, 154 A.3d at 787. The admission of Burno's statement did not have a "substantial and injurious effect or influence" on the jury's verdict because the jury heard inculpatory statements from Burno through the recorded calls. *Brecht*, 507 U.S. at 637.

H

In Claims V and VII, Burno advances additional arguments for why the trial court erred in admitting inculpatory statements he made on September 26, 2003. The Court considers these two claims together because they derive from the same facts. In Claim V, Burno asserts that his September 26 statement to the police must be "suppressed in its entirety because the trial prosecutor illegally applied pressure and coercion" upon him, leading to an induced false confession, in violation of his Fifth and Fourteenth Amendment rights.[15] (Br. Supp. Pet. 84.) In Claim VII, Burno argues that

---

[15] The trial court ruled that the first half of the confession on September 26, 2003 was inadmissible because Burno's counsel was not present. *Burno*, 154 A.3d at 788. The Court therefore interprets Burno's Petition to challenge only the admission of the second half of the September 26, 2003 interview.

the trial court erred when it admitted the second half of his September 26 statement because it was not "purge[d] of the primary taint" from the first-half of his statement— which the trial court suppressed as a violation of Burno's right to counsel.  (Br. Supp. Pet. 108.)   In both claims, he also contends that trial counsel was ineffective for failing to present and preserve the claims, and that the Supreme Court of Pennsylvania denied him due process when it failed to consider the claims on their merits in 2014.[16]  (*Id*.)

1

The facts relevant to Claims V and VII involve a two-day span where Burno made multiple inculpatory statements to the police.  On September 24, 2003, Burno gave the police and prosecutor a statement where he denied shooting either of the victims and asserted that he remained outside the apartment while Bethea shot both men.  *Burno*, 154 A.3d at 783.  The police and prosecutor did not believe him, so Clark and ADA Dantos agreed to have the police administer a polygraph examination to Burno.  *Id*.  Immediately after Burno was told he failed, he became upset, started crying, and was very apologetic.  *Id*. at 783.  Burno asked to speak with his attorney, but Clark was unavailable.  *Id*. at 772.  ADA Dantos then entered the interview room to tell Burno that authorities were attempting to contact Clark.  *Id*.  She eventually reached Clark via telephone, and Burno and Clark spoke over the phone.  *Id*. Clark

---

[16]     For the reasons mentioned previously, Burno's ineffective assistance of counsel claims are procedurally defaulted.  *See supra* Section III.B.  Burno additionally contends that the Supreme Court of Pennsylvania denied him due process by dismissing Claims V and VII when they were "squarely and fairly raised in his interlocutory appeal" to the Supreme Court of Pennsylvania.  (Br. Supp. Pet. 84, 119.)  In its 2014 opinion, the court dismissed his claims without prejudice.  The same issues returned to the state supreme court on direct appeal, and the court decided the issues on the merits in its 2017 opinion.  *See generally Burno*, 154 A.3d 764.

agreed to come to the police station, but in the meantime, he authorized Burno to speak with detectives outside of his presence. *Id.*

Burno then met with Detectives Simock and Effting. The detectives read Burno his *Miranda* rights and he subsequently confessed to being inside the apartment during the murders and to shooting Rosado. *Id.* at 772; 788–89. Clark then arrived at the police station and spoke briefly with Burno, after which the detectives continued the interview. *Id.* at 773. Burno gave a second statement—this time with his attorney present—and much of the second-half of the interview involved the detectives reviewing parts of the earlier interview with Burno. *Id.* Burno again admitted his involvement in the murders. *Id.*

Before his trial, Burno moved to suppress all of the statements he made on September 26; the trial court suppressed his statements from the first part of the September 26 interview because they were made outside the presence of his counsel. (Order, Feb. 5, 2007, No. CP-39-CR-0003637-2003). Burno now challenges the admission of the second half of the police interview.[17]

2

The Court first addresses Burno's argument that his statements to the police were coerced. Burno raised this claim before the Supreme Court of Pennsylvania, but the court rejected it on the merits, holding that his confession was voluntary. *Burno*, 154 A.3d at 790. And as this Court concluded with respect to Claim VI, the admission

---

[17]     The Court assumes, without deciding, that the first half of Burno's September 26 statement was properly suppressed. Neither party challenged the suppression of the first half of the statement on direct appeal to the Supreme Court of Pennsylvania nor was it raised as an issue in Burno's *habeas* Petition or the Commonwealth's response.

of Burno's September 26 statements, even if erroneous, was harmless error. Nonetheless, the Court will review the coercion claim on its merits.

The Fifth and Fourteenth Amendment Due Process Clauses prohibit the use of incriminating statements that were made involuntarily. *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002). The purpose of the voluntariness requirement is to deter police misconduct and ensure the reliability of confessions and inculpatory statements. *Id.* A defendant's statement is considered involuntary—and thus a Fifth and Fourteenth Amendment violation—when his "will was overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). To determine whether a statement was made involuntarily, a court must consider the totality of the circumstances, including "both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The surrounding circumstances of this inquiry include the "crucial element of police overreaching," *Colorado v. Connelly*, 479 U.S. 157, 163 (1986), as well as consideration of "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." *Withrow v. Williams*, 507 U.S. 680, 693 (1993) (internal citations omitted).

Under AEDPA, the Court is "required to determine whether the state court's legal determination of voluntariness was contrary to or an unreasonable application of Supreme Court precedent." *Lam*, 304 F.3d at 264. When deciding the voluntariness issue, the Supreme Court of Pennsylvania relied on and cited to Pennsylvania law rather than federal law. The court applied a totality of the circumstances analysis and

56

considered the following factors: "the duration and means of interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any other factors which may serve to drain one's powers of resistance to suggestion and coercion." *Burno*, 154 A.3d at 790 (quoting *Commonwealth v. Perez*, 845 A.2d 779, 787 (Pa. 2004)).

Even though the Supreme Court of Pennsylvania applied its own precedent, its application of *Perez* mirrors the United States Supreme Court's voluntariness standard as explained in *Withrow* and *Dickerson*. Both Supreme Court and Pennsylvania precedent apply a totality of the circumstances test and look to the same relevant factors: the attitude of the police and factors tending toward coercion, the duration and location of the interrogation, and the accused's physical and mental state. *Compare Withrow*, 507 U.S. at 693, *with Perez*, 845 A.2d at 787. Because the state court applied a totality of the circumstances test, its ruling was not contrary to Supreme Court precedent establishing the proper standard for determining whether the confession was involuntary. *See Lam*, 304 F.3d at 264.

The Supreme Court of Pennsylvania also was not objectively unreasonable in determining that Burno's statements were voluntary under the totality of the circumstances. *See* 28 U.S.C. § 2254(d)(1). The court considered the following facts in its analysis: (1) Clark was present during initial plea negotiations that would have taken the death penalty off of the table; (2) Clark advised Burno to be truthful; (3) Clark was physically present for the second half of the confession (which is the only part of the confession at issue in Burno's Petition); (4) detectives read Burno his *Miranda* rights at least three times; (5) no facts suggest that Burno failed to

57

understand his rights; (6) no facts indicate that Burno was forced to speak with the police; (7) the interrogation was not extensive or performed in a way to weaken Burno's psychological condition; and (8) no facts demonstrate that the police were threatening or abusive. *Id.* at 790. Further, the court determined that ADA Dantos's conversation with Burno outside the presence of counsel did not render the confession involuntary; rather, the court found it was Burno's crying and "professing his regret" that prompted ADA Dantos to tell Burno that if he told the truth, she would reassess his case going forward. *Id.* at 791. The state court applied the relevant factors, and in doing so, did not reach an objectively unreasonable decision.

Finally, factual determinations made by the state court "shall be presumed to be correct," 28 U.S.C. 2254(e)(1), and it is the petitioner's burden to rebut the presumption by clear and convincing evidence. *Id.* Burno has not done so. Burno relies on the fact that he "repeatedly testified that D.A. Dantos coerced him to confess" to support his argument. (Br. Supp. Pet. 86.) But there is no evidence other than the fact that ADA Dantos met with Burno outside the presence of counsel to buttress this allegation. Accordingly, the state court's determination that Burno's confession was voluntary is not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable application of the facts. 28 U.S.C. § 2254(d).

3

Claim VII of Burno's Petition also relates to the admissibility of inculpatory statements made during the September 26, 2003 police interview. He argues that the trial court erred when it admitted the second half of his September 26 statement because it was not "purge[d] of the primary taint" from the first-half of his statement,

which the trial court suppressed because Burno's counsel was not present during the interview. (Br. Supp. Pet. 108.) He also argues that trial counsel was ineffective for failing to present and preserve the claim, and that the Supreme Court of Pennsylvania denied him due process when it failed to consider the claim on the merits in the 2014 decision.[18] (*Id.*)

Claim VII has been properly exhausted in the state courts: Burno raised the "fruit of the poisonous tree" argument on direct appeal to Supreme Court of Pennsylvania, and the court disposed of the issue on the merits, holding that the presence of Burno's lawyer during the second half of the confession "purged any taint that resulted from the first statement, [which] refutes Burno's claim that the second statement was fruit of the poisonous tree." *Burno*, 154 A.3d at 789. The Court therefore reviews the claim under the AEDPA deference standard required by 28 U.S.C § 2254(d).[19]

i

The Court must first determine the legal ground(s) on which the trial court relied to suppress the first half of Burno's September 26, 2003 interview; the answer to that threshold question affects whether or not Burno was entitled to a fruit of the poisonous tree analysis. Burno is adamant that the trial court suppressed the first half

---

[18] For the reasons mentioned previously, Burno's ineffective assistance of counsel claims are procedurally defaulted. *See* Section III.B. Burno additionally contends that the Supreme Court of Pennsylvania denied him due process by dismissing Claim VII when it was "squarely and fairly raised in his interlocutory appeal" to the Supreme Court of Pennsylvania. (Br. Supp. Pet. 119.) The Supreme Court of Pennsylvania's 2014 opinion dismissed his claim without prejudice. Burno raised the claim again in the second direct appeal, and the court denied the claim on the merits in the 2017 opinion. *Burno*, 154 A.3d at 788–89.

[19] Again, the Court has already concluded that even if Burno's September 26 statements were wrongfully admitted, any error was harmless. Nonetheless, the Court will still assess the merits of Burno's claim.

of his September 26 statement on Sixth Amendment grounds. (Br. Supp. Pet. 109.)  But

the trial court's order never mentions the Sixth Amendment in the context of his

confession.  (Order, Feb. 5, 2007, No. CP-39-CR-0003637-2003.)  In reviewing the trial

court's footnote order that suppressed the first half of Burno's confession, the judge

cited only one case—*Minnick v. Mississippi*, 498 U.S. 146 (1990)[20]—in support of his

ruling:

> Constrained by the United States Supreme Court's holding in *Minnick v. Mississippi*, this court is bound to suppress the portion of Defendant's statement made on September 26, 2003, after he indicated that he wished to speak to counsel but before his counsel arrived to the scene.  In *Minnick*, the Supreme Court chose to enunciate a bright-line rule: "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation *without counsel present*, whether or not the accused has consulted with his attorney."

(*Id.*) (internal citations omitted). Later in the order, with respect to second half of

Burno's interview, the court indicated that it "r[a]n afoul of no constitutional or other

prophylactic rule."  (*Id.*)

    In Burno's second direct appeal, the Supreme Court of Pennsylvania does not

indicate whether it interpreted the trial court's order as relying only on *Minnick* and

the Fifth Amendment alone, or also on the Sixth Amendment.  Instead, it "assumed"

---

[20] *Miranda v. Arizona*, 384 U.S. 436 (1966) and its progeny, including *Edwards v. Arizona*, 451 U.S. 477 (1981) and *Minnick v. Mississippi*, 498 U.S. 146 (1990)—are all cases establishing prophylactic measures designed to safeguard the Fifth Amendment's right against compelled self-incrimination.  In *Miranda*, the Court, in order to protect against self-incrimination, set forth the rule that when an individual is taken into custody and subjected to questioning, he must be informed that he has the right to remain silent, that anything he says can be used against him, that he has to right to the presence of any attorney, and that if cannot afford an attorney, one will be appointed. *Miranda*, 384 U.S. at 478–79.  The Court extended the safeguard in *Miranda* when, in *Edwards v. Arizona*, the Court held that once a defendant invokes his right to counsel under *Miranda*, the police must cease interrogation, and re-interrogation may only occur once counsel has been made available or the defendant initiates further communication.  *Edwards*, 451 U.S. at 485–86.  After *Edwards* came *Minnick*, which established the rule that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick*, 498 U.S. at 153; *see also id.* at 150 (explaining that the Court's decision is made "without reaching any Sixth Amendment implications in the case").

that "the first portion [of Burno's September 26 interview] was obtained by the police in violation of the Constitution." *Burno*, 154 A.3d at 788. And now before the Court is Burno's *habeas* Petition, in which he states that his Sixth Amendment right to counsel was violated. (Br. Supp. Pet. 109.) The Commonwealth does not argue to the contrary.

A reading of the trial court's order suggests that it relied on *Minnick* alone, but the references to "constitutional" rules at the end of the order could arguably be understood as reliance on both the Fifth and Sixth Amendment. The Court will accordingly address Burno's fruit of the poisonous tree argument with respect to suppression under both *Minnick* and the Sixth Amendment.

ii

Assuming that the first half of Burno's September 26 statements were suppressed on the basis of *Minnick* alone, his fruit of the poisonous tree argument carries no weight. The Supreme Court has never required application of the *Wong Sun v. United States*, 371 U.S. 407 (1963), suppression doctrine to confessions that occur after an initial confession was provided in violation of *Minnick*. In *United States v. Patane*, for example, the Court held that the failure to give a suspect his *Miranda* warnings did not require suppression of the physical fruits of the suspect's unwarned but voluntary statements. 542 U.S. 630 (2004); *see also Oregon v. Elstad*, 470 U.S. 298, 307–08 (1985) (explaining that if a statement is made inadmissible by *Miranda* but is otherwise a voluntary confession, the subsequent statements do not require suppression). Although *Patane* and *Elstad* deal with *Miranda* violations rather than a *Minnick* violation, both cases demonstrate the Court's reluctance to extend the fruit of the poisonous tree doctrine to prophylactic rules. Indeed, as the Court stated in *Elstad*, "[s]ince there was no actual infringement of the suspect's constitutional rights, [it] was

61

not controlled by the doctrine expressed in *Wong Sun* that fruits of a constitutional violation must be suppressed."  470 U.S. at 308.  The Supreme Court of Pennsylvania violated no clearly established federal law, as determined by the Supreme Court, by not suppressing the subsequent statements Burno made during the second half of the September 26 interview.  *See* 28 U.S.C. § 2254(d)(1).

iii

Turning now to Burno's Sixth Amendment suppression argument, a violation of a criminal defendant's constitutional rights may require the exclusion of "evidence later discovered and found to be derivative of an illegality"—the so called "fruit of the poisonous tree."  *Segura v. United States,* 468 U.S. 796, 904 (1984).  Although the exclusionary rule is most often applied in the context of Fourth Amendment violations, it is not limited to the Fourth Amendment and has been applied to Sixth Amendment violations.  *See, e.g.*, *Nix v. Williams*, 467 U.S. 431, 442 (1984) ("[T]he 'fruit of the poisonous tree' doctrine has not been limited to cases in which there has been a Fourth Amendment violation.  The Court has applied the doctrine where the violations were of the Sixth Amendment, see *United States v. Wade*, 388 U.S. 218 (1967).").  The exclusionary rule seeks to deter police from committing constitutional violations and to effectuate the purposes of the constitutional right at issue.  *See id.* at 442–43; *Brown v. Illinois*, 422 U.S. 590, 601 (1975) (same).

Not all evidence must be excluded "simply because 'it would not have come to light but for the illegal actions of the police.'"  *Segura*, 468 U.S. at 815 (quoting *Wong Sun*, 371 U.S. at 487–88).  Instead, "the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection

is made has been come at by exploitation of that illegality" or "by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun*, 371 U.S. at 488 (internal quotation marks omitted).   The relevant question to ask is whether the second, subsequent confession constituted "sufficiently an act of free will to purge the primary taint" of the unlawful first confession.   *Id.* at 486.

The United States Supreme Court has identified factors to consider when determining whether a subsequent confession has been purged of its original and unlawful taint: (1) whether *Miranda* warnings were given, (2) the "temporal proximity" between the illegal conduct and the subsequent confession, (3) "the presence of intervening circumstances," and (4) "the purpose and flagrancy of the official misconduct."   *Brown*, 422 U.S. at 603–04.   Where there are two confessions, the first obtained illegally before the second, the prosecution bears the burden to demonstrate facts "sufficient to insulate the [subsequent] statement from the effect of all that went before."   *Clewis v. Texas*, 386 U.S. 707, 710 (1967); *see Kaupp v. Texas*, 538 U.S. 626, 633 (2003) (per curiam).

The Supreme Court of Pennsylvania's decision was not contrary to clearly established federal law, as determined by the United States Supreme Court.   *See* 28 U.S.C. § 2254(d)(1).   From the outset, the court properly relied on *Wong Sun* and *Brown* to set forth the applicable framework for Burno's "fruit of the poisonous tree" argument. *Burno*, 154 A.3d at 788–89.   The court also listed multiple factors to consider when determining whether the original taint had been sufficiently purged.   Specifically, the court relied on its own precedent when listing those factors, *see Commonwealth v. Green*, 581 A.2d 544 (1990).   The *Green* factors are identical to those discussed in

*Brown*: (1) whether *Miranda* warnings were given, (2) the temporal proximity between the unlawful police conduct and the subsequent confession, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of police misconduct. *Burno*, 154 A.3d at 789 (citing *Green*, 581 A.2d at 550–51).

Having determined that the state court's decision was not contrary to clearly established federal law, the Court next considers whether the decision involved an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Again, a state court's decision involves an "unreasonable application of federal law if the state court "identifies the correct governing legal principle" but "unreasonably applies that principle to the facts of the prisoner's case." *Dennis v. Sec'y, Pa. Dep't Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc) (quoting *Williams*, 529 U.S. at 413). It is not enough that the state court applied the law incorrectly; instead, the inquiry depends on "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Whether a rule is unreasonably applied "corresponds to the specificity of the rule itself: '[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (internal quotation marks omitted).

Here, the state court correctly identified the four *Brown* factors and applied them to the circumstances surrounding Burno's interrogation. *Burno*, 154 A.3d at 789.

With respect to the first factor, the Supreme Court of Pennsylvania noted that the detectives had advised Burno of his *Miranda* warnings and that he appeared to be acting on his own free will. *Id.* Even though the detectives did not re-*Mirandize* him when Clark arrived, the court placed great weight on Clark's arrival and subsequent presence during the second-half of the interview, determining that his appearance "very clearly suffice[d] as an intervening event" that broke the chain of events between the first and second half of the interrogation. *Id.* Indeed, Clark's absence was the only deficiency during the first half of the interview. The court also concluded that the police misconduct was neither purposeful nor flagrant; rather, Clark actually advised the detectives that they could begin questioning Burno outside of his presence. *Id.* And finally, with respect to temporal proximity, the court did address this issue, though in an indirect way. The court first explained that where the confessions occur in brief succession, the prosecution must show sufficient facts "to insulate the [second] statement" from the tainted first one. *Id.* (quoting *Clewis*, 386 U.S. at 710). From there, the court explained that notwithstanding the fact that some substantive portions of the two interviews overlapped, the presence of Burno's attorney and the lack of any evidence of police coercion removed any taint from the first statement. *Id.* Although the court's analysis of temporal proximity could have been more direct, it considered all four factors and placed considerable emphasis on the arrival of counsel: "The lawyer's presence purged *any* taint that resulted from the first statement, and refutes Burno's present claim that the second statement was fruit of the poisonous tree and should be suppressed." *Burno*, 154 A.3d at 789 (emphasis added). The state court's decision was not objectively unreasonable. *See Williams*, 529 U.S. at 429. Even if it were a violation

of his constitutional rights to admit the second half of the September 26 statement, the Court has already determined that Burno cannot establish that the violation "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. That the jury heard recordings of telephone calls Burno made from jail makes the September 26 statements merely cumulative evidence. As such, the Court has no "grave doubt about whether a trial error of federal law had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Davis*, 135 S. Ct. at 2198 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

4

Burno raises three alternative grounds in his "fruit of the poisonous tree" claim to support his argument that the September 26 statements should have been suppressed. He contends: (1) the Commonwealth failed to prove that he made a knowing and voluntary waiver of his Fifth Amendment right to remain silent after the first half of the interview concluded, because no one warned him that the first portion of the interview could no longer be used against him; (2) the *Miranda* waiver during the first half of the interrogation was not valid for the second half, such that the detectives' failure to re-*Mirandize* him requires the entire interview to be inadmissible; and (3) police coercion caused him to make involuntary statements. *See* (Br. Supp. Pet. 117–18.) Burno raised the first and third of these suppression arguments on direct appeal to the state court. *See* Brief for Appellant at 26–31, *Burno*, 154 A.3d 764 (No. 716 CAP).

The Court disposes of Burno's alternative arguments in reverse order. With respect to his police coercion theory, the Supreme Court of Pennsylvania rejected this

claim on the merits, and this Court denied *habeas* relief on this ground for the reasons previously discussed in Section III.H.2.  As for Burno's second alternative argument— that the detectives violated Burno's constitutional rights when they failed to re-*Mirandize* him for the second half of the September 26 interview—Burno never raised this issue on direct appeal or collateral review into the state courts.  For that reason, Burno has not exhausted the claim, and it is procedurally defaulted.

Finally, the Court must consider whether Burno's first alternative argument— that "the prosecution failed to prove that Burno made a knowing and intelligent waiver of his Fifth [A]mendment right to remain silent following the illegally obtained first half" of the interview—was adjudicated on the merits by the state court.  (Br. Supp. Pet. 117.)  "A judgment is 'on the merits' only if it was delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments."  *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 282 (3d Cir. 2018) (quoting *Williams*, 568 U.S. at 302)).  However, §2254(d) does not require a "state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, 562 U.S. at 100.  When "a federal claim has been presented to the state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.  This presumption that the federal claim was adjudicated on the merits "applies whether the state court does not address '*any* of the defendant's claims' or 'some but not all of the defendant's claims.'"  *Bennett*, 886 F.3d at 282 (quoting *Williams*, 568 U.S. at 298).  The presumption may be rebutted by the *habeas* petitioner

for the purpose of showing that the claim should be reviewed *de novo* by the federal court. *Williams*, 568 U.S. at 301–02.

As indicated in *Williams*, there are multiple reasons why a state court may not discuss every single claim that a defendant raises, even as a passing reference. For example, the state court may not have regarded the argument as sufficient to raise a separate federal claim, or the state court may have considered the claim to be "too insubstantial" to merit any discussion. *Williams*, 568 U.S. at 299. Here, the Supreme Court of Pennsylvania did not expressly address Burno's alternative theory—*i.e.*, that the second-half of the interview must be suppressed because he did not make a knowing and intelligent waiver of his Fifth Amendment right. *See Burno*, 154 A.3d at 788–89. The court, however, noted that "Burno had been advised of his *Miranda* warnings, and, by all other indications, was acting of his own free will." *Id.* at 789. Burno's presentation of the alternative theory was lodged in the last few pages of his "fruit of the poisonous tree" argument and it was not formatted as separate and independent claim, suggesting that when the Supreme Court of Pennsylvania denied the federal "fruit of the poisonous tree" issue, the court viewed the alternative issue as "too insubstantial to merit discussion." *Williams*, 568 U.S. at 299.

The rejection of this argument was neither contrary to nor an unreasonable application of federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). To support his claim, Burno relied on two cases: *Oregon v. Elstad*, 470 U.S. 298 (1985), and *Missouri v. Seibert*, 542 U.S. 600 (2004). *See* Brief for Appellant at 30–31, *Burno*, 154 A.3d 764, (No. 716 CAP). Neither decision, however, governs to Burno's September 26, 2003 interrogation.

In *Elstad*, the Court held that "absent deliberately coercive or improper tactics in obtaining the initial statement," a post-*Miranda* statement would not automatically be excluded because of an earlier, pre-*Miranda* statement.  470 U.S. at 314.  The *Elstad* Court directed lower courts to "examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his [initial] statements."  *Id.* at 318.  *Elstad* does not govern the circumstances of Burno's interview because the detectives read Burno his *Miranda* rights at the beginning of the September 26, 2003 interview, and none of his statements were found to be involuntary or coerced by the Supreme Court of Pennsylvania.

*Seibert* similarly involves a question of whether a second confession should be admissible after the accused provided an initial statement without the benefit of first receiving *Miranda* warnings.  There, officers made a "deliberate" choice to circumvent *Miranda* warnings on the first round of interrogation as a police tactic to induce the confession a second time after the accused received *Miranda* warnings.  *Id.* at 620.  The Court affirmed the state court's suppression of the second, nearly continuous statement, and distinguished *Seibert* from *Elstad* on the grounds that the warning here had been intentionally withheld.  *Id.* at 615.  Here, the detectives read Burno his *Miranda* rights at the beginning of the interview, and there is no evidence or finding in the record that they attempted to deny Burno his constitutional rights.  Additionally, if Burno were seeking to analogize the facts of *Seibert* to his case by suggesting that his invocation of counsel under *Minnick* was intentionally ignored, this argument would fail on the facts; the only reason detectives questioned Burno without his lawyer present was because Burno's lawyer gave them permission to do so.  *See Burno*, 154

69

A.3d at 772.  In any event, the Court has already concluded that even if Burno's September 26 statements should have been suppressed, any error was harmless.  *See* Section III.G.3.

For the foregoing reasons, the Court denies Burno's motion to amend the Petition and denies the *habeas* Petition in full.  An appropriate Order follows.

BY THE COURT:

 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

70